## 28402. HAUGABROOKS *v.* METROPOLITAN LIFE INSURANCE COMPANY.

*Walter A. Sims, Henry M. Henderson,* for plaintiff.
*Smith, Smith & Bloodworth,* for defendant.

MacIntyre, J.   Geneva Haugabrooks brought this action against the Metropolitan Life Insurance Company, on two insurance policies, for what may be termed the double indemnity or death benefit resulting from bodily injuries as provided in said policies covering her husband, Thomas Haugabrooks.   One of these policies was a regular group life policy, covering the employees of the Biltmore Hotel of Atlanta, under which Haugabrooks was insured for $1000, to which was attached and made a part thereof a supplementary agreement insuring Haugabrooks for an additional $1000 in the event his death resulted from bodily injuries such as were covered by the supplementary agreement.   The other policy was an industrial policy on the life of Thomas Haugabrooks in the sum of $175, and provided for an additional payment of $175 in the event the insured's death resulted from bodily injuries such as were covered by the terms thereof.   The single indemnity provided by each of said policies was promptly paid by the insurance company to Geneva Haugabrooks, as acknowledged by her pleadings.   The supplementary agreement referred to in the group policy provided in effect that an additional $1000 would be paid for the accidental death of the insured, unless the insured's death was "caused wholly or partly, directly or indirectly, by disease, or bodily or mental infirmity, or by medical or surgical treatment thereof."   The similar provision of the industrial policy also provided for payment of an additional $175 for accidental death of the insured, unless the death of the insured was "the result of self-destruction, whether sane or insane [or] if death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity."   The case was tried before a jury.   The verdict was for the defendant.   The plaintiff's motion for new trial was overruled, and she excepted.

■   The jury were authorized to find from the evidence that the insured, while in the employment of the Biltmore Hotel, suffered

a stroke of paralysis and cerebral thrombosis on January 25, 1939, while at work, and was treated by and under the care of Dr. Alfred A. Weinstein. On the last occasion that this doctor saw him, June 19, 1939, he instructed the insured to lead a life of leisure. In the meantime, for about three weeks before this date, the insured had been going to Jackson, Georgia, to help operate his wife's (plaintiff's) funeral home. On June 29, 1939, the insured and Will Bennett went fishing on the Ocmulgee River. They stopped their car on the highway and walked down on the river bank about 200 yards from the road. The insured stopped at this spot on the bank, and Will went further down the bank to another spot to fish. When Will came back the insured could not be found. He was finally located in the water approximately three feet deep. J. D. Willard, with the help of others, pulled him out of the water and laid him on the bank. He was dead. The sheriff and Dr. Aiken were sent for, came to the scene, and examined the body of the insured. Dr. Aiken testified on direct examination: "I made an examination of his body. I did not find any signs of injury or damage or bruises of any kind to his body. I did not find any quantity of water in him, practically no water. I did not find any evidence of violence on his body at all. . . As to what my opinion would be as to the cause of this man's death, from the examination I made and the situation I saw there myself, well, I didn't find anything there, and from my examination, trying to resuscitate and pump water, and found no grabbing or scuffling at anything, found no water in him, my diagnosis was that he came to his death by some paralytic stroke or angina or something that way, but he didn't show no signs of getting no water or nothing out of him. In the case of drowning, froth at the mouth or nostrils is one of the usual signs of death by drowning, but there was none on him when I got there. I did not find any signs of his having grabbed, or any sprigs or anything at all in his hands. I did not see any signs of any struggle from his clothes, the way they were arranged on his person." Dr. Aiken testified, on cross-examination: "As to whether I gave the coroner's jury my opinion as to the cause of the death, I said he looked like to me he must have had some spell or something or other, and fell in" the river. Dr. Alfred A. Weinstein, who was the insured's doctor on the occasion of his first stroke, after having been told the facts and circumstances of

the occasion which resulted in the insured's death, gave his expert opinion that "It would be my best medical opinion, based on the facts which you have asked me, that he had another cerebral hemorrhage. . . That would be my opinion as to the cause of his death. It is definitely my opinion that he had a stroke before he landed in the water."

From this evidence we are of the opinion that the jury were authorized to find that the insured's death was caused by a disease, and that under the terms of the policies the plaintiff, insured's wife and beneficiary in the policies, was not entitled to recover under the accident feature of the policies. The evidence authorized the verdict in favor of the defendant.

■ Special grounds 1 and 2, complaining of the same excerpt from the judge's charge, were in effect abandoned.

■ Grounds 3, 4, 5, 6, and 7 complain of the following excerpt from the judge's charge: "I further charge you that the policies of insurance sued on in this case, so far as the claim as made in the present suit is concerned, do not cover accident, injury, death, or other loss which is caused wholly or partially, directly or indirectly, by disease, or bodily or mental infirmity; and if you should find from the evidence that the death of Thomas J. Haugabrooks was caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, then it would be your duty to return a verdict in favor of the defendant. On the other hand, gentlemen, if you believe from the evidence in the case that the deceased, Haugabrooks, met his death through accidental means, not contributed to wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, then the plaintiff in the case would be entitled to recover; and if the plaintiff recovers in the case, gentlemen, she should be entitled to recover $1000 on one of the policies and $177.15 on the other policy." One of the assignments of error to this portion of the charge is that it placed a greater burden upon the plaintiff than is required by law, in that it not only required the plaintiff to prove by a preponderance of evidence that the insured drowned, but also that the plaintiff had to show that the drowning was not contributed to by disease or other infirmities. "The burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential." Code, § 38-103. But where the

judge correctly charges in regard to the general burden of proof, he is not required, as an essential part of his charge (in the absence of a proper request), to discuss the shifting of the burden as to the particular points of contest made by the evidence. *Hawkins* v. *Davie,* 136 *Ga.* 550 (71 S. E. 873); *Windham* v. *Taylor,* 42 *Ga. App.* 521 (156 S. E. 744); *Tucker* v. *Talmadge,* 186 *Ga.* 798, 799 (4) (198 S. E. 726). The judge had previously correctly charged on the general burden of proof, as follows: "The burden of proof is upon the plaintiff to establish by what is known as a legal preponderance of the evidence that the contentions the plaintiff makes are true; and by a legal preponderance of the evidence the law simply means the greater weight of the evidence, the law defining it as being" (here the definition in the Code was given in charge). He had also, immediately preceding the charge complained of, charged the jury as follows: "I charge you that there is no legal presumption that death resulted from an accident, but the burden is upon the plaintiff in this case to prove, under the rules of evidence I have given you in charge, that Thomas J. Haugabrooks came to his death as a result, directly and independently of all other causes, of bodily injuries sustained solely through violent, external, and accidental means; and if the plaintiff, in your opinion, has not carried this burden, then it would be your duty to find in favor of the defendant." This was a correct charge. *New York Life Insurance Co.* v. *Jennings,* 61 *Ga. App.* 557, 559 (6 S. E. 2d, 431). The answer of the defendant denied the material allegations of the petition to the effect that the deceased died from accidental drowning; and further set forth that the deceased, even if he did come to his death through external and violent or accidental means, yet defendant says his death was "caused or contributed to, wholly or partly, directly or indirectly, by disease, or bodily or mental infirmity and that therefore there can be no recovery by the plaintiff in this case." There was no request to charge as to the shifting of the burden; and under the foregoing rulings this excerpt from the charge, when considered with the charge as a whole, was not error for the reason that it placed a greater burden on the plaintiff than is required by law.

The plaintiff further contends that this excerpt was not a correct statement of the law and that the judge should have charged, without request, as follows: "If you believe from the evidence in this

case that the plaintiff has carried the burden and has shown by a preponderance of the evidence that the insured met his death as a result of accidental drowning, then it would be your duty to find for the plaintiff, unless the defendant has shown by a legal preponderance of the evidence that disease or other infirmities was the cause of the death of the insured, the burden being upon the defendant to prove by a legal preponderance of the evidence that the insured died as a result of disease or other causes." In other words, the plaintiff seems to think that it was necessary for the judge to charge the rule in the abstract, whereas he charged the jury with reference to the concrete. The charge above quoted which the plaintiff contends should have been given was in the abstract, whereas the excerpt from the charge complained of was in the concrete. The court in this case was here charging the jury and enumerating the facts necessary for a verdict in favor of the defendant, and instructed them that if these were established by proof, they should find for the defendant, and further enumerated certain other facts necessary for a verdict in favor of the plaintiff, and instructed them that if these were established by proof they should find for the plaintiff. This is permissible. A judge need not confine himself to the abstract, but may instruct the jury with reference to the concrete. *Martin* v. *State, 57 Ga. App.* 346 (195 S. E. 313) ; *Blumenthal* v. *State,* 121 *Ga.* 477 (49 S. E. 597). There was no request to charge; and if counsel desired the fuller or more abstract charge, he should have so requested. These grounds are not meritorious.

■   The court did not err, as contended in grounds 8 and 9, in excluding from evidence a certificate of death issued by the local registrar of Butts County, which contained the following verdict of a coroner's jury: "We, the jury, find that Thos. J. Haugabrooks came to his death from accidental drowning about 40 yds. below bridge on Ocmulgee River." This certificate with the verdict attached was obviously offered for the purpose of showing by the verdict that the death of the insured was caused by an accident; for the fact of death was not in issue; the sole issue was whether the death was the result of an accident or of a disease. This evidence was properly excluded. *Supreme Council of the Royal Arcanum* v. *Quarles,* supra; *Sovereign Camp W. O. W.* v. *Winn,* 23 *Ga. App.* 760 (99 S. E. 319).

■ It is true that "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him. If several parties to the same case shall have distinct interests, each may exercise this right." Code, § 38-1705. But the trial judge has a discretion to control the cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled by a reviewing court unless it is abused. *Rogers* v. *State*, 18 *Ga. App.* 332 (89 S. E. 460); *Clifton* v. *State*, 187 *Ga.* 502, 508 (2 S. E. 2d, 102). It does not appear that there was any abuse of discretion in this case. Grounds 10, 11, and 12, complaining of the judge's control of the cross-examination of J. D. Willard, a witness for the defendant, are not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

DECIDED DECEMBER 4, 1940.