29360. HARRIS *v.* METROPOLITAN LIFE INSURANCE COMPANY.

DECIDED MARCH 12, 1942.

*Thomas L. Slappey, G. H. Howard,* for plaintiff.

*Smith, Smith & Bloodworth,* for defendant.

STEPHENS, P. J. Mrs. Bessie Harris brought suit against Metropolitan Life Insurance Company, alleging that she was the beneficiary under two policies of life insurance issued to her husband, Ford B. Harris, which provided for payment of a double indemnity if his death occurred as a result of accidental means; that is, resulting wholly and exclusively from bodily injuries effected through external, violent, and accidental means; that at the time of the death of the insured the policies were in full force, all premiums having been fully paid; that on September 21, 1940, the insured died as a result, directly and independently of all other causes, from bodily injuries effected solely through external, violent, and accidental means from the injury caused by an automobile in which the insured was driving being struck by a street car on September 17, 1940; that the injuries sustained in the collision with the street car were the direct and proximate cause of his death; that the defendant had paid to the plaintiff $592.86, the principal of the policies, but had denied liability for and refused to pay the amount due under the double-indemnity features of the policies. Other allegations in the petition are not now material. The defendant filed an answer admitting certain allegations of the petition, but denying that it received any proper proof that the insured had died under such conditions as would bring the death within the accidental death benefits of the policies, and denying liability therefor. In an amendment the defendant alleged that the contract of insurance sued on contained the following provisions: "No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if the death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity;" and further alleged that at the time of his death the insured was and had been for some eighteen months or two years previously thereto suffering from coronary disease or angina pectoris, which caused or contributed to his death, and that therefore there could be no recovery of the accidental death benefits sued for.

The plaintiff introduced in evidence the two policies sued on, both of which contained the provisions set up in the amendment to the answer. The plaintiff also introduced a certificate of death

from the office of the registrar of vital statistics, in which the "primary cause of death" was given as "coronary disease, one year," and "contributory causes" were given as "automobile accident, September 16, 1940;" the physician who signed the report of death being W. P. Pentecost. The plaintiff introduced also, as part of the proofs of death, a certificate of Dr. Pentecost in which it was stated that the cause of death was coronary disease for one year and six months, and the contributory or secondary cause was automobile accident. The plaintiff also introduced the proofs of death furnished by her to the company, in which she stated that the cause of death was angina pectoris and the duration of the last sickness was one year and five months.

Dr. Pentecost testified that he was called on or about the middle of September, 1940, to treat the insured who had been in an automobile accident, and was having a great deal of pain, complaining of a great deal of pain in his left side in the region below the heart, and it hurt him to breathe; that the witness strapped him up and gave him something to ease him; that he had been treating the insured for angina pectoris for about a year and a half before his death; that he thought the accident possibly shortened the life of the insured, and as to whether the accident could have been the immediate cause of death, taking into consideration that the insured was in a weakened condition from heart trouble it was reasonable to suppose that it contributed to his death; that when he went to see the insured on September 17, 1940, he did not see any bruises or lacerations or swelling at the point where the insured was complaining of pain; that he strapped the insured with adhesive, but saw no scratches or bruises or swelling of any kind in that region, and did not see any external signs of injury at all. Dr. Pentecost also testified: "I think he died from his heart giving way. I think it was a heart condition that killed him; no doubt about that. I would not want to express an opinion as to what part any injury had in his death." Other testimony in the case need not be stated.

On the conclusion of the plaintiff's evidence the defendant moved for a directed verdict, and the court directed the jury to find for the defendant. The plaintiff moved for a new trial on the general grounds and because of alleged error in directing a verdict. This motion was overruled and the plaintiff excepted; assigning as error the direction of the verdict and the overruling of the motion.

Under the evidence a verdict for the plaintiff would not have been authorized. The provision in the insurance contract is that "no accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity." Under this provision the distinction between the primary cause and the secondary cause of death is wholly immaterial. If the death was caused or contributed to, directly or indirectly or wholly or partially, by disease, there can be no recovery. In the briefs of both parties it seems to be conceded that there is no Georgia decision on a policy with these exact provisions which would be determinative of the present case. Under the evidence the only reasonable contention which could be urged in behalf of the plaintiff is that the automobile accident caused the plaintiff to have a recurrence of his heart trouble, which proved fatal. It is not contended that the insured sustained an injury in the collision which by itself would have produced death, and there is no evidence to support such a contention. Consequently, the case falls within the category of a death caused or contributed to wholly or partially by disease, and for such a death the company is not liable to pay the additional accidental death benefits.

This conclusion is not contrary to the ruling in *Thornton* v. *Travelers Insurance Co.*, 116 *Ga.* 121 (3) (42 S. E. 287, 94 Am. St. R. 99), in which the question was different from that in the present case, but is in harmony therewith. In the *Thornton* case the question was whether the disease had caused the accident, and not, as in the present case, whether the disease had co-operated with the accident in producing death. In the *Thornton* case the court said that if the hernia contributed to the accident in whole or in part, directly or indirectly, the company would not be liable. So here, as the heart disease contributed to the death in whole or in part, directly or indirectly, the company is not liable. *Hall* v. *General Accident Assurance Cor.*, 16 *Ga. App.* 66 (85 S. E. 600), is distinguishable from the present case in several respects. Among these it may be noted that the language of the policies was different from that involved in the present case. In the *Hall* case the court held that the fall of the insured might have been the sole proximate cause of death, even if the disease had contributed to his death,

and the grant of a nonsuit was held to be error. But in the present case the contract provides specifically against liability in cases where the death is caused or contributed to by disease or bodily infirmity. Furthermore, the court said in the *Hall* case "When two or more causes may have contributed to an injury, and there is doubt, or the facts are of such a character that equally prudent persons would draw different conclusions, as to which of the contributing causes was the efficient, dominant, and proximate cause, the question should be submitted to the jury." Under the evidence in the present case it can not be said that there is any doubt that the death was at least partly due to heart disease.

Several decisions by this court have involved the same policy provision now under consideration, but did not decide the question raised in the present case. *Bankers Health & Life Insurance Co.* v. *Smith* 54 *Ga. App.* 525 (188 S. E. 463); *National Life &c. Insurance Co.* v. *Upchurch,* 57 *Ga. App.* 399 (195 S. E. 588); *Haugabrooks* v. *Metropolitan Life Insurance Co.,* 63 *Ga. App.* 829 (12 S. E. 2d, 163). The United States Circuit Court of Appeals for the fifth circuit recently rendered a decision on facts quite similar to those of the present case, holding that the trial court erred in not directing a verdict for the defendant. Mutual Life Ins. Co. v. Loeb, 107 Fed. 2d, 7. In this decision the court referred to the *Thornton* and *Hall* cases as distinguishable.

There was no error in directing a verdict for the defendant or in overruling the motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*