35287. INTER-OCEAN CASUALTY COMPANY *v.* SCOTT.

DECIDED DECEMBER 17, 1954.

312

*Wm. F. Buchanan, Newell Edenfield, Lamar Sizemore,* for plaintiff in error.

*Dudley Cook, Robert Flournoy, Jr.,* contra.

QUILLIAN, J. The sole argument by the plaintiff in error before this court is on the general grounds of the motion for new trial and on the motion for a judgment notwithstanding the verdict. The facts of this case are not in dispute, though, as will appear further on in this opinion, there may have been some slight variance of opinion expressed by the several doctors who testified as to the effect the insured's previous condition of health had on his ultimate demise. The evidence showed that Scott, the insured, a man 68 years of age, apparently in good health and actively engaged in business, was struck by an automobile or truck on the afternoon of February 9, 1953, and sustained a fractured left leg and shoulder. He was taken to a hospital and treatment of the broken leg was begun. Some eight days after his injury and when he was apparently making a satisfactory recovery from the injuries inflicted when he was struck by the truck, Mr. Scott developed severe abdominal pains. According

to the medical testimony, these were diagnosed as stemming from the gall bladder and Mr. Scott was operated on to remove his gall bladder. The physician who operated found "an acute gangrenous cholecystitis and cholelithiasis present," removed the gall bladder, and administered antibiotics. The patient "convalesced following that procedure in a promising manner, but he soon developed multiple body [symptoms] and failed so rapidly that he passed away on February 24, 1953." The evidence of the deceased's personal physician, Dr. F. M. Atkins, showed that Mr. Scott showed no signs of gall-bladder trouble at the time he was admitted to the hospital for treatment of the injuries sustained by being struck by the automobile, but that he first developed gall-bladder symptoms on about the 8th or 9th day after the injury; that, in a more or less routine checkup in 1949, an X-ray had revealed that Mr. Scott then had two small gall stones which were not then deemed of sufficient significance to warrant an operation for their removal; and that large heavy-set people, such as was Mr. Scott, are very prone to have gall stones. Dr. Atkins further testified that Mr. Scott would probably still be living had he not had the accident; that, as to whether there was any relation to the traumatic injury in the flare-up of the gall-bladder trouble, "we find that, for some reason, shock or any injury that way has a tendency sometimes to flare up in latent conditions, and, in my opinion, it probably was the cause of the flare-up of Mr. Scott's gall bladder. It is my opinion that his death was *indirectly* caused by the traumatic injury received by him in the accident." Dr. Atkins, however, repeatedly refused to say that Mr. Scott's death was due to the broken leg, and he testified that he did not know what caused his death, but thought it was brought about by subsequent complications from the broken leg, meaning the flare-up of the diseased gall-bladder condition.

Dr. Earl Rasmussen, who assisted in the operation to remove Mr. Scott's gall bladder, testified that an accumulation of several factors, namely, "his injury, his operation on his leg, his subsequent convalescence from that, and his gall-bladder disease," contributed to Mr. Scott's death.

Dr. C. W. Davidson, a resident physician at the Atlanta Veterans' Administration Hospital, who performed the autopsy on

the deceased, testified as to his findings and enumerated the diseases with which he found the deceased to have been afflicted, and testified that some of them, at least, were diseases of long standing and that in his opinion they contributed to the death of Mr. Scott.

Dr. Hamil Murry, who examined a microscopic section of the gall bladder removed from Mr. Scott prior to his death, testified that from his knowledge of the case, in his opinion the broken leg was not solely responsible for Mr. Scott's death.

Though possibly varying in some particulars as to their opinions as to the exact cause of Mr. Scott's death, it will be seen from the foregoing summary of the evidence that the medical witnesses were unanimous in the opinion that Mr. Scott's injuries were not solely the cause of his death, but that the diseased condition of his gall bladder in particular and his "bilary tract" infection in general, together with arteriosclerosis contributed in some degree more or less to his demise.

The policy sued on in this case insured against loss (including death, for which the principal sum was payable) resulting solely from bodily injuries effected directly and independently of all other causes through accidental means. The policy further provided: "The accident insurance under this policy covers all bodily injuries, fatal or otherwise, subject to the conditions herein specified, except those sustained by the insured: . . . (3) those caused wholly or partly by bodily, or mental infirmity, ptomaines, bacterial infections (except pyogenic infections, which shall occur with and through a wound, effected by accidental means) or by any kind of disease or medical or surgical treatment therefor, such ptomaines, bacterial infections, disease or medical or surgical treatment to be construed as sickness."

In *Harris* v. *Metropolitan Life Ins. Co.*, 66 *Ga. App.* 761 (19 S. E. 2d 199), the insured died as the result of a pre-existing heart ailment, which was aggravated by an automobile accident in which he was involved, and the policy provided for the payment of double indemnity if the insured's death "occurred as a result of accidental means; that is resulting wholly and exclusively from bodily injuries effected through external, violent and accidental means"; and the contract contained the further provision that "no accidental death benefit will be paid if the death

of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly or wholly or partially by disease, or by bodily or mental infirmity." This court there held: "Under this provision the distinction between the primary cause and the secondary cause of death is wholly immaterial. If the death was caused or contributed to, directly or indirectly or wholly or partially, by disease, there can be no recovery. In the briefs of both parties it seems to be conceded that there is no Georgia decision on a policy with these exact provisions which would be determinative of the present case. Under the evidence the only reasonable contention which could be urged in behalf of the plaintiff is that the automobile accident caused the plaintiff to have a recurrence of his heart trouble, which proved fatal. It is not contended that the insured sustained an injury in the collision which by itself would have produced death, and there is no evidence to support such a contention. Consequently, the case falls within the category of a death caused or contributed to wholly or partially by disease, and for such a death the company is not liable to pay the additional accidental death benefits."

The plaintiff in its well-prepared brief cites a host of cases of other jurisdictions for the proposition of law that, "Where, however, at the time he sustained an accidental injury the insured was suffering from a disease or other infirmity, and such disease or infirmity proximately caused, or substantially contributed to, his death or injury, it is generally held that no recovery can be had under a policy insuring in substance against death or injury resulting, independently of all other causes, from accidental means, or variations of such provisions, and containing no express exception with respect to disease, infirmity, etc."

In New Amsterdam Casualty Co. v. Shields, 155 Fed. 54, it is held: "If the insured recovered from his former attacks of this disease, so that it no longer existed in his body, and there was only a susceptibility to have it in case a proper exciting cause should arise and in this case the fall against the dashboard proved to be such exciting cause, the case would be one for recovery under the policy; but if, because of the former attacks, there was not merely susceptibility to a further attack, but the actual disease itself existed, liable to be rendered active and

virulent by an injury such as that suffered by the insured, in that event the active disease which resulted in death would not be regarded as the result of the fall alone, but as the joint result of the fall and the latent disease; and hence there could be no recovery under the policy."

Under authority of cases hereinbefore referred to and after careful analysis of the evidence submitted in this case, we have reached the conclusive opinion that the evidence demanded a finding that the insured did not die solely from accidental causes; that his death resulted in part from the disease and surgical treatment for the disease, and that, under the quoted clause of the policy, the verdict for the plaintiff was without evidence to support it.

However, on further review of this case we feel constrained to recede from the view expessed in the opinion in this case as originally written, by consideration of a decision of our Supreme Court and a decision of this court earlier than the case of *Harris* v. *Metropolitan Life Ins. Co.*, supra. The cases referred to are *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 122 (42 S. E. 287, 94 Am. St. R. 99) and *Hall* v. *General Accident &c. Corp.*, 16 *Ga. App.* 66 (85 S. E. 600).

In *Thornton* v. *Travelers Insurance Co.*, supra, Justice Cobb wrote (p. 129): "That clause in the policy which excepts from the operation of the policy injuries resulting from disease, etc., properly construed, excepts an accident which is the result of disease, and not the consequences flowing from an accident which was entirely disconnected with the disease. To illustrate: If a policyholder should have a serious and long-continued illness, such as a fever of some nature, and while recovering therefrom, and in a condition unable to resist successfully any serious shock, should receive a blow upon the head from falling plastering, from which death ultimately, though not immediately, resulted, the proximate cause of the death would be, not the fever, but the blow from the plastering, although death may not have resulted but for the debilitated condition of the injured person resulting from the fever. In such a case the immediate cause of the death was the blow on the head, though the consequences might be the result of the disease from which he suffered. In order to defeat a recovery under such a clause in the

policy it must be shown that the disease was the substantial cause of the injury, and the mere facts that the disease may aggravate the consequences of the injury and make them more serious than they would have been otherwise does not bring the case within the exception stated in the policy."

From what is held in the *Thornton* case, the conclusion is inescapable that, in order for the disease to be held a contributing cause of the insured's death within the meaning of the policy clause, it must appear that the disease caused the injury to which the insured succumbs. It is under the concept of the Supreme Court as expressed by Justice Cobb that the insured's beneficiary is not debarred from recovery because an injury caused solely by an accident, together with mental or physical infirmity, brought about the insured's death.

The holding in the *Hall* case, supra, written by this court's Chief Judge Russell is predicated upon the court's opinion that the real meaning of a clause such as is contained in the policy in the case at bar, given reasonable interpretation, means no more than that the disease must be shown to have been the proximate and not simply one of the causes of the insured's death.

Judge Russell, speaking for the court, points out that any other construction would result in the practical impossibility that any man be insured against death resulting from accident, by a policy containing a clause providing that the insured's death must result solely from accident and independently of disease. He states as the premise for this pronouncement that no man is entirely well, and where one is injured, unless he die immediately, some disease or physical disorder existing in his system will to some extent contribute to its fatality.

The case of *Harris* v. *Metropolitan Life Ins. Co.*, supra, points out as a distinguishing feature between what is held in it and in *Hall* v. *General Accident &c. Corp.*, supra, that in the *Hall* case the clause discussed was different. Indeed it was, but the opinion was broad enough in its scope to embrace consideration of the clause contained in the *Harris* case, supra, as well as that appearing in the policy in the present case.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*