19732.   PRUDENTIAL INSURANCE COMPANY OF
AMERICA *v.* KELLAR.

ARGUED JULY 8, 1957—DECIDED SEPTEMBER 6, 1957.

*Spalding, Sibley, Troutman, Meadow & Smith, William K.
Meadow, Griffin B. Bell, Richard A. Denny, Jr.,* for plaintiff in
error.

*Pittman & Greene,* contra.

ALMAND, Justice.   Mrs. Lemma B. Kellar, the designated bene-
ficiary under an insurance contract between John C. Kellar and

Prudential Insurance Company of America brought suit against the insurer to recover an additional sum of $3,000, alleged to be payable under the accidental-death-benefit provision of the policy, the principal sum having been paid to the beneficiary. After the evidence had been submitted by the parties, the motion of the insurer for a directed verdict in his favor was denied, and the jury returned a verdict for the petitioner. The insurer's motions for a judgment notwithstanding the verdict and for a new trial were denied. The insurer's exceptions to these orders were, upon appeal to the Court of Appeals, overruled and the judgments of the trial court were affirmed. *Prudential Ins. Co. of America* v. *Kellar*, 95 *Ga. App.* 332 (98 S. E. 2d 90). The case is here on the grant of the insurer's petition for a writ of certiorari.

The insurer issued a group-insurance policy to Louisville & Nashville Railroad Company, under which John C. Kellar was issued a certificate and was covered by the terms of the policy. The certificate issued to Kellar provided for $3,000 in life insurance and an additional $3,000 accidental-death benefit. The accidental-death benefit was made payable in the following words of the certificate: "$3,000.00 payable to the Beneficiary in addition to the amount of insurance, specified above, immediately *upon receipt of due proof that the death of said employee occurred* while said employee was in the employ of the Employer and insured under said Policy, *as a result, directly and independently of all other causes, of bodily injuries,* effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days of the accident, *provided, however, that no Accidental Death Benefit shall be payable if such resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form.*" (Italics supplied).

On the trial, the facts were stipulated to such an extent that the sole issue was whether the cause of the insured's death was such that, under the terms and conditions of the policy, the accidental death benefits would be due and payable. The only

evidence on this issue was a certified copy of the death certificate filed with the Georgia Department of Public Health by the insured's physician, and the testimony of this physician. The undisputed evidence shows that Kellar was injured in an accident when struck by a truck on November 7, 1955, wherein he sustained a fracture of the neck of the left femur and a fracture of the left wrist. His hip was nailed on November 8, and he was discharged from the hospital on November 18, his general condition being good at that time. On November 28, 1955, he was returned to the hospital when it was discovered that the nail had withdrawn from the hip. On November 30, the plate and nail in his hip were repositioned and he was released from the hospital. On December 6, he suffered a severe myocardial infarction and was returned to the hospital, where he remained for three weeks. He died suddenly on January 14, 1956. The insured's physician, in the certificate filed with the Department of Public Health, stated: "1. Disease or condition directly leading to death: (a) Myocardial infarction. Antecedent Causes due to: (b) Hypertensive cardiovascular disease. 2. Other significant conditions. Conditions contributing to the death but not related to the disease or condition causing death: Fracture neck left femur." The insured's physican testified: that he first treated the insured in June, 1953, for high blood pressure, and, through treatments, his blood pressure was reduced from 236/136 to 150/80; that from June, 1953, until the time of the accident, the insured had worked the entire time except for a period when he had a slight stroke in 1955. The physician further testified that he did not believe that the accident and subsequent surgery was the cause of the heart attack, but that, in his opinion, "it was certainly an aggravating factor both in the attack and its course." As to what relationship the injuries that the insured received in the accident had to his death, the physician stated: "As to whether or not I would say that he didn't die directly and independently of all other causes from the injuries he received in the accident; well, we have already said that he died from the heart attack, that was the thing that killed him right then, but these injuries and things, I think contributed to it. When I say 'contributed', I mean they may have aggravated his high blood

pressure; well, yes, sir, I say aggravated his general status of his high blood pressure and others, and hardening of the arteries, together. . . As to whether or not I think that it helped to bring on his death sooner than he otherwise would have if he hadn't had these injuries; well, if he had not sustained these injuries, it would be reasonable to assume that he would have been in better shape physically to have withstood a heart attack."

The Court of Appeals ruled that, under the provisions of the life policy in the instant case, double benefits could not be recovered "if the insured has a pre-existing physical impairment which contributes to the injury in whole or in part, directly or indirectly"; but where "the physical impairment does not contribute to the injury but merely aggravates the consequences of the occurrence, recovery is not thereby precluded as a matter of law"; and held that there was sufficient evidence to authorize the jury to find that the injuries sustained by the insured accelerated and aggravated the insured's heart and circulatory condition and thus caused his death. The case of *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99), was cited in support of their ruling. In our opinion, the ruling in the *Thornton* case is inapplicable here because the provisions of the policy as to double indemnity in that case are entirely different from the terms of the policy in the instant case. In the *Thornton* case, the insured sought to recover on an insurance policy for injuries suffered in an accident. The policy provided, (p. 124): "This insurance shall not cover . . . accident, nor injuries, nor disability, nor death, nor loss of limb or sight, resulting wholly or partly, directly or indirectly . . . from hernia." It was there held that after the insured had prima facie shown that he had suffered an injury from an accident within the meaning of the policy, it was incumbent upon the insurer to show that the existence of the hernia was a substantial contributory cause which wholly or partly, directly or indirectly, brought about the injury resulting from the accident, and that liability under the policy is not defeated by simply showing that the existence of the hernia rendered more serious the consequences resulting from the accident. In the instant case, the policy provided that no accidental death benefit would be pay-

able "if such death resulted . . . directly or indirectly, from bodily or mental infirmity or disease in any form." The death certificate constituted prima facie evidence that myocardial infarction was the direct cause of the insured's death. See Ga. L. 1945, pp. 236-242 (Code, Ann., § 88-1118). This proof as to the cause of the insured's death was not rebutted, the undisputed testimony of the physician who signed the certificate being that the disease or condition of the insured directly leading to his death was a myocardial infarction, or heart attack, with antecedent causes due to hypertensive cardiovascular disease, or high blood pressure, of several years' duration. The injuries sustained in the accident *contributed* to his death, but they *were not* related to the disease or condition *causing* his death. Were we to apply the facts in the instant case to the test as to liability set forth in the *Thornton* case, they would read as follows: Did the condition of the insured in having at the time of his death a heart disease, contribute to his death in whole or in part, directly or indirectly? If it did so contribute, the insurer would not be liable. Thus it appears that, even if the ruling in the *Thornton* case was applicable here, the test as to liability or nonliability laid down in that opinion does not support the ruling of the Court of Appeals.

In *Harris* v. *Metropolitan Life Ins. Co.*, 66 *Ga. App.* 761 (1) (19 S. E. 2d 199), a case where the essential facts are similar to the facts in the instant case, it was held: "Where a life-insurance policy provides for the payment of an additional benefit if the insured sustains bodily injuries 'resulting, directly and independently of all other causes, in the death of the insured' if his death occurs within ninety days from the date of the injury, and further provides that 'no accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity,' the company is not liable for such additional benefit if the death of the insured was due wholly or in part to an attack of heart disease to which the insured had been subject for more than a year, nothwithstanding an automobile accident four days before his death may have precipitated his death." In

its opinion, the court stated that its conclusion was not contrary to the ruling in the *Thornton* case, because "the question was different from that in the present case, but is in harmony therewith," and because the wording of the policies of insurance was different. In Davis *v.* Jefferson Standard Life Ins. Co., 73 Fed. 2d 330, the court had before it a suit to collect the full amount of insurance under a double-indemnity provision in case of death by accidental means in a policy on the life of the plaintiff's deceased husband, where the policy excluded any recovery of double indemnity where death resulted "directly or indirectly from bodily or mental infirmity." In affirming a directed verdict for the insurer, Circuit Judge Sibley, speaking for the court, said: "Insurance against death by accident is usually afforded for a small premium, and the coverage is correspondingly narrow. The liability is guarded by carefully chosen words. Courts have no more right by strained construction to make the policy more beneficial by extending the coverage contracted for than they would have to increase the amount of the insurance. The insurance here is not against unintended death from bodily injury effected by violent, external means generally, but only when the violent, external means can be said to be accidental and when they solely and independently of all other causes produce the death. If a bodily infirmity, though unknown at the time, is a concurring cause without which death would not have resulted, the policy does not cover the case."

Under the terms of the policy, the insurer in the instant case was not liable to pay double the amount of the policy if the death of the insured resulted directly or indirectly from bodily infirmity. The undisputed evidence disclosing that the primary cause of the insured's death was heart failure brought on by previous high blood pressure, and that the injuries he sustained to his hip and wrist in the accident, 68 days before his death, merely aggravated or accelerated his existing bodily infirmity, the insured's beneficiary was not entitled to a recovery and a verdict in favor of the insurer was demanded.

Our conclusion is supported by practically all of the authorities of other jurisdictions. In Appleman, "Insurance Law and Practice," Vol. 1, 494, § 403, it is said: "As a general rule, it has been

stated that if there is a pre-existing disorder or illness at the time an injury is received, recovery may still be had if the injury was severe enough to have caused the entire damage or considerable damage, but not if the disease was the proximate cause or principal cause thereof. From this, it has been held that where a diseased condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is to cause the death or disability. This has been particularly supported where the death or disability would not have resulted from the external injury alone, but, with the combination of injury and disease, the loss is produced." See cases cited in annotation, 131 A. L. R. 251, 254.

The Court of Appeals erred in its ruling that the trial court did not err in denying the insurer's motion for a judgment in its favor notwithstanding the verdict.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Mobley, J., who dissent.*