## 50173. INTERSTATE LIFE & ACCIDENT INSURANCE COMPANY v. UPSHAW.

WEBB, Judge.

Death came to Lewis H. Upshaw on September 7, 1968, but whether his beneficiary in a 40 cents weekly premium accidental death policy is entitled to payment thereunder is still pending for final determination. The question has been in litigation since August 8, 1969. The first trial resulted in a verdict and judgment for the insurer; the beneficiary moved for and was granted a new trial on the general grounds; the insurer appealed to this court, contending that the grant of a new trial was error as the verdict was demanded by the evidence; this court held that the verdict for the insurer was not demanded, and affirmed the decision of the court below (*Interstate Life &c. Ins. Co. v. Upshaw,* 127 Ga. App. 858 (195 SE2d 287)); and the case was tried anew, resulting in a verdict and judgment this time for the beneficiary for $3,700 principal, $925 as bad faith penalty, $2,500 as attorney fees, 7% interest as provided by law, and costs. It is from this judgment that the insurer again appeals.

The facts are tersely stated in this court's previous

decision: "Eyewitnesses saw the deceased fall from a log truck to the ground, a distance of about eight feet. He died a very short time thereafter of a coronary embolism. The only evidence of injuries was a scratch or slight bruise on the forehead, and the coronary embolism. The evidence was in dispute as to whether the fall was accidental, or was caused by the coronary embolism. The evidence was also in dispute as to whether the fall, if accidental, could have dislodged a blood clot or thrombus and caused the embolism." The policy sued on provides: "Indemnity for death by accidental means, as defined herein: Upon receipt of due proof that during the continuance of this policy in force, the insured has sustained bodily injuries effected solely through violent, external and accidental means, *and that such bodily injuries have directly and independently of all other causes,* caused death of the insured within ninety days from the time such injuries were so sustained, the company will pay to the beneficiary named in the schedule the principal sum . . ." and no indemnity shall be payable if death results *"directly or indirectly from bodily or mental infirmity* or disease in any form . . ." (Emphasis supplied.)

The death certificate, the autopsy report, and the physician's statement attached to the "proof of death" furnished to the insurer, each gave the cause of death to be "Embolism left coronary artery" and that death was "immediate." The autopsy report reads that "there was not a bruise of any description on the body. On opening the chest an examination of the heart revealed a large embolism of the left coronary artery." Dr. Richard C. Shepherd, who had performed the autopsy, testified that the decedent's fall was caused by the embolism and he was probably dead when he was falling, that the embolism originated from a thrombus; that the thrombus had been in the man's artery probably three or four years and had not given him any trouble, that he died immediately when the embolus broke loose from the thrombus, and that the force of a blow would not have had anything to do in causing the thrombus to move and produce the stoppage of the artery and cause his death; that the embolus killed him immediately.

Dr. Moore J. Smith, Jr., who never saw the insured

dead or alive, and the only other expert witness, testified on cross examination "A man that fell from a standing position and was found to have an embolus in the coronary artery presumably obstructing it, and no evidence of any injury to the body, I would have to say the most likely cause of death was from the obstruction in the coronary artery."

The coroner, Harry C. Millard, testified that he examined the decedent's lower extremities, limbs, feet, legs, hips, arms, the head, looked into the mouth, the eyes, nose, ears, and throat, his entire body, and that there were no broken bones nor any bruises about him anywhere.

The insurer's motions for judgment notwithstanding the verdict, judgment notwithstanding the verdict for penalty and attorney fees, and for new trial all were denied. Its seventeen enumerated alleged errors on appeal are condensed to nine postulations in the presentation of argument. We posit only one basic thesis which, in our judgment, in itself is dispositive of this case, to wit: under the terms of the subject accident policy the insurer is not liable if the death of the insured was due wholly or in part to a pre-existing disease or bodily infirmity, notwithstanding an accident may have precipitated his death. *Harris v. Metropolitan Life Ins. Co.,* 66 Ga. App. 761 (19 SE2d 199); *Gulf Life Ins. Co. v. Braswell,* 101 Ga. App. 133 (112 SE2d 804); *Prudential Ins. Co. of America v. Kellar,* 213 Ga. 453, 457 (99 SE2d 823) and cits; 10 Mer. L. Rev. 88; 21 Mer. L. Rev. 167.

In *Metropolitan Life Ins. Co. v. Abbott,* 118 Ga. App. 587, 588 (164 SE2d 859) the contract covered death " 'as a result, directly and independently of all other causes, of bodily injuries sustained . . . solely through violent, external and accidental means,' and excluded death 'caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity.' " The language in the policy sub judice is strikingly identical. The evidence in *Metropolitan* was that the insured fell on steps at work and hit his head, thereafter became incoherent and unconscious, was hospitalized and before he died two and one-half days later was diagnosed as having pneumonia. The insured had pre-existing heart and lung diseases. This court then said, "[T]he issue is whether the evidence

would authorize an inference and finding that pre-existing disease was not a contributing cause of the insured's death. In this case there was no evidence that would authorize a finding that the insured's heart and lung diseases did not contribute to cause his death. The result is the same even if we assume that the insured's fall was not caused by his heart and lung difficulties, and that his pneumonia had its beginning after the fall," citing *Harris v. Metropolitan Life Ins. Co.*, 66 Ga. App. 761, supra.

Similarly, in *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453, 457, supra, the policy provided that no accidental death benefit would be payable " 'if such death resulted . . . directly or indirectly, from bodily or mental infirmity or disease in any form.' [Identical to the provision in the policy sub judice.] The death certificate constituted prima facie evidence that myocardial infarction was the direct cause of the insured's death . . . This proof as to the cause of the insured's death was not rebutted, the undisputed testimony of the physician who signed the certificate being that the disease or condition of the insured directly leading to his death was a myocardial infarction, or heart attack . . . The injuries sustained in the accident *contributed* to his death, but they *were not* related to the disease or condition *causing* his death . . . Did the condition of the insured in having at the time of his death a heart disease, contribute to his death in whole or in part, directly or indirectly? If it did so contribute, the insurer would not be liable."

The Supreme Court, speaking through Mr. Justice Almand, in the *Prudential* case, supra, p. 459, quoted with approval Appleman, Insurance Law and Practice, Vol. 1, 494, § 403 (Now Vol. 1A, 76). "[W]here a diseased condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is to cause the death or disability." See *Johnson v. Aetna Life Ins. Co.*, 66 Ga. App. 629 (18 SE2d 777); *Overstreet v. Metropolitan Life Ins. Co.*, 69 Ga. App. 459 (26 SE2d 115); *Inter-Ocean Cas. Co. v. Scott*, 91 Ga. App. 311, 316 (85 SE2d 452); *Gulf Life Ins. Co. v. Braswell*, 101 Ga. App. 133, supra; *Miller v. Life & Cas. Co. of Tenn.*, 102 Ga. App. 655 (117 SE2d 237); 84 ALR2d 176, 203, 218

and cits.

"If the death was contributed to or caused by disease or bodily infirmity the plaintiff was not entitled to recover. *Harris v. Metropolitan Life Ins. Co.*, 66 Ga. App. 761 (19 SE2d 191). The burden of proving liability on the part of the defendant was on the plaintiff. *Green v. Metropolitan Life Ins. Co.*, 67 Ga. App. 520 (21 SE2d 465) and cit. There was no evidence that the fall was accidental or was caused by accidental means, or that it was not caused by physical disease or infirmity. The latter theory was not reasonably excluded by the evidence, and no presumption fortified the plaintiff's case." *Overstreet v. Metropolitan Life Ins. Co.*, 69 Ga. App. 459, 460, supra.

"The evidence shows, without dispute, that the deceased fell on his head into a five or six-foot ditch with a rock bottom, from which fall he received a cut on his head, necessitating two stitches; that immediately prior to falling he dropped his shovel, his hands and arms were limp at his side, his head dropped forward, and he fell back and to the side into the open ditch with his arms lax, making no attempt to break the fall; and an autopsy after his death, of the chest area only, showed evidence of a recent heart attack, recent enough to have occurred at the time of his fall, and the only medical witness, the one making the autopsy, expressed the opinion that the deceased died from the heart attack. There was no evidence as to whether or not there was any injury to his skull or brain, and there was no evidence that the deceased tripped or slipped when he fell. Such evidence fails to show that the fall was accidental, but rather that the heart attack caused the fall; nor does such evidence show that the death occurred as a result of the head injuries. The burden of proof was upon the plaintiff to show that the death came within the terms of the policy, and, under the evidence adduced, it was not error for the trial judge to direct a verdict in favor of the defendant." *Cook v. Life Ins. Co. of Ga.*, 111 Ga. App. 277 (141 SE2d 607), and cits.

There was ample evidence of the presence of an embolus in the coronary artery, and there was no evidence that would authorize a finding that this bodily infirmity did *not* contribute to cause death of the insured, the

burden being upon the beneficiary to so prove. On the contrary, the physician who performed the autopsy and signed the death certificate positively stated the cause of death to be "embolism left coronary artery." "Established heart and arterial disease is frequently considered to be a physical infirmity or disease under policy provisions such as this, with the result that no recovery is allowed, and the words 'bodily infirmity' mean no more than 'disease.' " *Businessmen's Assurance Co. v. Tilley,* 109 Ga. App. 529, 531 (2) (136 SE2d 514), and cits.

The trial court erred in denying the insurer's motion for judgment notwithstanding the verdict.

*Judgment reversed. Bell, C. J., and Marshall, J., concur.*

SUBMITTED FEBRUARY 3, 1975 — DECIDED MARCH 10, 1975 —
REHEARING DENIED MARCH 31, 1975 — ▮▮▮▮▮▮▮

*Shaw & Shaw, George P. Shaw,* for appellant.
*Hatcher & Daniel, Ross L. Hatcher, III,* for appellee.