**Judie Fay WESTBROOK,
Plaintiff–Appellant,**

v.

**SAFECO LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 89–8245.

United States Court of Appeals,
Eleventh Circuit.

Aug. 13, 1990.

Adele Grubbs, Lynn M. Stevens, Marietta, Ga., for plaintiff-appellant.

Christina A. Craddock, John V. Burch, Bovic, Kyle and Burch, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, Chief Judge, TUTTLE and RONEY *, Senior Circuit Judges.

PER CURIAM:

Judie Fay Westbrook, executrix for Ernest Westbrook's (the decedent's) estate, brought this suit against Safeco Life Insurance Company (Safeco) to recover disability benefits under an accident insurance policy held by Lockheed Corporation, the decedent's employer. Westbrook also alleged that coverage had been denied by Safeco in bad faith and therefore sought statutory and punitive damages. The district court directed verdicts on both the bad faith claim and the coverage claim. Westbrook now appeals from the district court's judgment entered on those directed verdicts. We affirm.[1]

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. After oral argument before this court, Safeco moved this court to certify to the Georgia Supreme Court the question of how to interpret the coverage clause at issue in this case. We

have carried that motion with the case and now deny it. The Georgia courts have interpreted the coverage clause at issue many times: we perceive no unanswered questions of state law lurking in this case.

## I.

The following facts are not disputed. On November 18, 1985, the decedent was working the night shift at a Lockheed facility. While walking up a flight of steps, the decedent tripped and fell. He continued working but suffered pain in his left foot for the next two days. On November 20, he sought medical attention. An X-ray taken that day revealed that blood clots had lodged in the decedent's left leg and foot. Dr. Oliver King, the decedent's treating physician, determined from the X-ray that the pain resulted from a loss of circulation to the area due to the blood clots. Although Dr. King was able to remove most of the clots surgically, some remained in the left foot, causing gangrene to set in. On November 29, 1985, the decedent's left foot was amputated. The decedent's problem with blood clotting continued, forcing the amputation of his left leg above the knee. After Dr. King's initial treatment of the decedent, he determined that a blood clot that had been lodged in the pelvic area was dislodged by the fall on November 18 and that the clot traveled to the left leg and foot, where it lodged again, causing circulation in the leg and foot to decrease significantly and eventually leading to the gangrenous condition. In August of 1986, blood clots began to lodge in the decedent's right leg, causing gangrene to develop in that leg as well. Apparently, these clots also originated in the pelvic area but were not dislodged by the accident of November 18. The decedent died from this condition shortly thereafter.

On the date of the decedent's accident, November 18, 1985, Lockheed maintained for its employees an accident insurance policy with Safeco. That policy covered losses "resulting directly and independently of all other causes from bodily injuries caused by accident." The policy excluded from coverage any loss "caused by or resulting from . . . [i]llness, disease, bodily infirmity or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound."

The decedent filed a proof of loss on December 4, 1985, in which he claimed that the amputation of his left foot and leg had resulted from an injury covered by the Safeco accident policy. The proof of loss included a physician's statement sent by Dr. King, indicating that the injury was "sustained due solely to the . . . accident." A Safeco representative sent a letter to Dr. King on March 12, 1986, asking Dr. King to elaborate on his earlier statement that the decedent's left foot and leg were amputated "due solely to the . . . accident." Dr. King responded on March 21 by explaining that the blood clot had been lodged in the decedent's pelvis for some time prior to the accident but that the accident caused part of the clot to dislodge and travel to the left leg and foot. Safeco then denied coverage.

Westbrook brought this suit in state court. She alleged that the decedent's loss of his left foot and leg resulted solely from his fall on November 18, 1985, and that his loss was covered under the Safeco accident policy. She also asserted that Safeco had, in bad faith, failed to make timely payment on the claim in violation of Ga.Code Ann. § 33–34–6 (1982).[2] Safeco removed the case to the district court, and the case eventually went to trial before a jury. At the close of Westbrook's case, Safeco moved for a directed verdict on both the coverage and bad faith issues, *see* Fed.R. Civ.P. 50(a); the court granted the motion with regard to the bad faith issue. At the close of all of the evidence, the court directed a verdict for Safeco on the coverage issue as well. The court entered judgment on those directed verdicts, and Westbrook now appeals.

## II.

When reviewing a district court's entry of a directed verdict, we consider all of the evidence in the light most favorable

---

2. Under section 33–34–6, benefits must be paid within thirty days of receiving "reasonable proof" of a covered loss. If payment is overdue, the insurer must pay a penalty of not more than 25% of the amount due and reasonable attor-ney's fees. If payment is not made within sixty days and the insurer has acted in bad faith, the insurer may also be subject to punitive damages.

to the nonmoving party and then ask whether any reasonable person viewing the evidence in that light could have reached a different conclusion. *See FDIC v. Marina*, 892 F.2d 1522, 1528–29 (11th Cir.1990); *see also Brady v. Southern Ry.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943) (court must ask whether, "without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict"). Westbrook argues that the evidence presented on the coverage and bad faith issues did not warrant directed verdicts in Safeco's favor. We disagree.

The policy in question clearly stated that it covered only those losses "resulting directly *and independently of all other causes* from bodily injuries caused by accident." (Emphasis added.) The policy excluded losses resulting from "[i]llness, disease, [and] bodily infirmity." Dr. King testified at trial that the decedent's diseased pancreas had created the blood clots and that this pancreatic "disease was not caused by the fall"; rather, it "preceded the fall." According to Dr. King, the decedent "fell and dislodged a blood clot that caused his loss of leg. That blood clot was there because of [his pre-existing] disease, not because of the fall.... Well, without the disease, there would have been no loss...." This testimony was never contradicted.

Georgia courts,[3] interpreting identical policy language in nearly identical circumstances, have consistently held that " '[w]here a diseased condition aggravates the result of the injury *or is, itself, aggravated thereby, there can be no recovery,* where the combined result is to cause the ... disability.' " *Life Ins. Co. v. McDaniel*, 141 Ga.App. 746, 234 S.E.2d 379, 382 (1977) (emphasis added) (quoting *Interstate*

*Life & Accident Ins. Co. v. Upshaw*, 134 Ga.App. 394, 214 S.E.2d 675, 677 (1975)); *see Prudential Ins. Co. v. Kellar*, 213 Ga. 453, 99 S.E.2d 823, 827 (1957). In *McDaniel*, for example, the decedent suffered from a condition known as thrombophlebitis, which simply meant that any trauma could result in the formation of blood clots in his legs. When the decedent fell from his motorcycle, either a blood clot was formed in his leg and then dislodged, or a pre-existing blood clot in his leg was dislodged. The clot eventually traveled to the decedent's lungs, which caused his death five days after the accident. The treating physician testified that the decedent's pre-existing disposition to the formation of blood clots contributed to his eventual death.

The Georgia Court of Appeals, interpreting an accidental death policy with virtually identical language to that of the policy at issue here, held that the decedent's "pre-existing diseased condition aggravated or was aggravated by his injury and the ensuing surgery" and therefore ordered the trial court to direct a verdict in the insurer's favor. *See McDaniel*, 234 S.E.2d at 382. We can find no basis for distinguishing *McDaniel* from the case at hand. Dr. King's uncontradicted testimony clearly indicates that the decedent suffered from a pre-existing condition that was aggravated by his fall on November 18, 1985. If the blood clot had not already formed in the decedent's pelvis, no significant injury would have occurred from the fall. Given *McDaniel* and the many other similar Georgia cases, we must conclude that, even viewing the evidence in the light most favorable to Westbrook, the decedent's loss of his leg did not result from an accident "independently of all other causes."[4]

**3.** In this diversity case, we apply the law of the forum state—Georgia. *See Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir.1983) (when no party raises the issue, court follows the general rule of applying the law of the forum state in diversity cases).

**4.** Westbrook cites *Inter–Ocean Cas. Co. v. Scott*, 91 Ga.App. 311, 85 S.E.2d 452 (1954), as controlling authority in this case. In *Scott*, the insured was struck by an automobile and was treated for a broken leg. Eight days later, he developed

abdominal pains resulting from a gangrenous condition in his gall bladder. One week later, the insured died from his gall bladder condition. Expert testimony revealed that the insured had suffered from a mild gall bladder condition that was aggravated by the accident. That aggravation led to the insured's death. The court, citing *Thornton v. Travelers Ins. Co.*, 116 Ga. 121, 42 S.E. 287 (1902), and interpreting a coverage clause identical to the one at issue in this case, held that the death was covered by the

**930**

Westbrook argues that the phrase "independently of all other causes" is not as easily applied as Safeco would have us believe. Westbrook directs our attention to cases in which similar policies have been interpreted more liberally in favor of the insured. All of those cases, however, were decided under the laws of different states. Certainly, "if the policy or contract of insurance is fairly susceptible of more than one construction, the interpretation most favorable to the insured will be given effect." *Dunn v. Travelers Indem. Co.*, 217 Ga. 426, 122 S.E.2d 518, 522 (1961). To determine whether the policy at issue is susceptible to more than one construction, however, we must look to how *Georgia* courts have interpreted similar or identical language. *See Casey Enters. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept.1981)[5] (law of forum governs determination of substantive coverage issues). Having examined the relevant Georgia cases, we do not hesitate to conclude that the language of the policy at issue is susceptible to only one construction: if a pre-existing disease or illness is but a "contributing factor" to the loss, there can be no recovery under accident policies of this type. *See Jordan v. United Ins. Co.*, 158 Ga.App. 520, 281 S.E.2d 286, 287 (1981) (interpreting identical language).

Finally, our discussion of the coverage issue disposes of the section 33–34–6 bad faith claim as well. When Dr. King explained to Safeco, in his letter of March 21, 1986, the causes of the decedent's loss, he stated that the decedent's fall had caused a pre-existing blood clot to dislodge and travel to the left leg and foot. Given this explanation, and in light of our discussion above, we think that Safeco clearly had a reasonable basis for denying coverage. *See Binns v. Metropolitan Atlanta Rapid Transit Auth.*, 250 Ga. 847, 301 S.E.2d 877, 878 (1983) (showing of a reasonable or probable basis for denying payment is a complete defense under section 33–34–6). Viewing the evidence in the light most favorable to Westbrook, we cannot conclude that a reasonable person could find in this case a bad faith denial of coverage in violation of section 33–34–6.

### III.

For the foregoing reasons, the district court's judgment entered on the directed verdicts in favor of Safeco is

**AFFIRMED.**

accident policy unless the pre-existing disease was "shown to have been the proximate *and not simply one of the causes* of the insured's death." *Scott,* 85 S.E.2d at 456 (emphasis added). The court therefore affirmed a judgment in the insured's favor.

The Georgia Supreme Court, however, had an opportunity to interpret the *Thornton* case three years later in *Kellar,* 99 S.E.2d at 826. The court, in *Kellar,* again construing an accident policy identical to the policy at issue, stated the *Thornton* test somewhat differently. According to the *Kellar* court, the question was simply: "Did the condition of the insured[,] in having at the time of his death a [pre-existing] disease, contribute to his death *in whole or in part, directly or indirectly?* If it did so contribute, the insurer would not be liable." *Kellar,* 99 S.E.2d at 826 (emphasis added). Thus, the *Kellar* court appears to have established a "but for" test for these types of accident policies: if the loss would not have occurred but for the pre-existing condition, the insured cannot recover under the accident policy.

The test established in *Scott* by the Georgia Court of Appeals is inconsistent with the Georgia Supreme Court's decision three years later. *See generally* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts §§ 41–42, at 265–74 (5th ed. 1984) (discussing differences between "but for" causation and proximate causation). We, of course, follow the precedent of the Georgia Supreme Court in *Kellar* and those cases interpreting *Kellar,* which have applied a "but for," or contributing factor, test.

5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.