## RAILWAY MAIL ASSOCIATION v. WEIR.

*Insurance—Fraternal benefit association—Insured and bene-
ficiary subject to by-laws amended after member admitted
—Accident insurance—Nonliability for death attributable
to disease or bodily infirmity—Heart trouble contributed
to death from automobile accident.*

1. Where application for membership in fraternal benefit
   association provided that it shall be subject to constitu-
   tion and by-laws now existing or hereafter enacted, asso-
   ciation had right to amend its by-laws after insured be-
   came a member so as to subject insured and beneficiary
   to amended by-laws.
2. In action under benefit certificate providing that association
   shall not be liable for death when disease or bodily infirm-
   ity is contributing cause of death, and unless accident
   alone resulted in visible external marks of injury on body
   of insured, evidence showing that insured was suffering
   from diseased condition of the aorta, resulting in forma-
   tion of plaques before automobile accident, and that such
   diseased condition was contributing cause of death, in-
   sured receiving no visible injury from collision, precluded
   recovery under policy.

(Decided February 8, 1927.)

ERROR: Court of Appeals for Lucas county.

*Mr. P. R. Taylor* and *Messrs. C. K. & S. M.
Friedman,* for plaintiff in error.

*Messrs. Fraser, Hiett, Wall & Effler,* for defend-
ant in error.

CULBERT, J.   The action was started in the court
of common pleas of Lucas county, wherein Nellie F.
Weir was plaintiff and the Railway Mail Associa-
tion was defendant, and grows out of a contract

which was entered into by and between the Railway Mail Association and Arthur J. Weir, husband of the plaintiff. The case was tried to a jury, and judgment rendered for plaintiff. Motion for a new trial was duly filed and overruled by the trial court. Proceedings in error are now prosecuted here, not only to reverse the judgment of the court below, but to have this court enter final judgment in favor of the plaintiff in error.

The defendant below, plaintiff in error, is a fraternal benefit association, and Arthur J. Weir, the husband of the plaintiff below, became a member thereof in the year 1900.

After he had joined the association, certain amendments to the by-laws of the association were regularly adopted, and one of the questions involved in this case is whether or not the association had the power to so amend its rules or by-laws as to subject a member to the provisions of the rules or by-laws as amended. Before becoming a member of the association, the following application was executed by the decedent:

"I hereby apply for a certificate of membership in the beneficiary department of the above-named association, to be based upon the following statements of fact, which I warrant to be full, complete and true, whether the same be printed or written by me or any other person, hereby agreeing that my certificate shall be subject to all the conditions therein contained, and the provisions of the constitution and by-laws now existing or hereafter enacted."  .

"The contract between a member of a fraternal society and the association consists of the statutes of the state under which the society is organized,

the charter of the society, its own code of laws, the application for membership, and the certificate.'' *Sabin* v. *National Union,* 90 Mich., 177, 51 N. W., 202; *Modern Woodmen of America* v. *Tevis,* 117 F. (C. C. A. 8th Cir.), 369; *In re Globe Mutual Benefit Assn.,* 63 Hun, 263, 17 N. Y. S., 852; *Palmer* v. *Welch,* 132 Ill., 141, 23 N. E., 412; *Supreme Lodge, Knights of Pythias,* v. *Knight,* 117 Ind., 489, 20 N. E., 479, 3 L. R. A., 409.

Many other cases might be cited along the same line.

The contractual relation between the members and the society is determined by a consideration of the entire body of laws governing society, and is not limited to those existing at the time when the member becomes such, unless rules have placed a limitation upon the power of the society to make any change or amendment therein. Any amendment or change adopted in accordance with the mode provided by the society, therefore, is binding upon all members. *Lawson* v. *Hewell,* 118 Cal., 613, 50 P., 763, 49 L. R. A., 400; *Norton* v. *Catholic Order of Foresters,* 138 Iowa, 464, 114 N. W., 893, 24 L. R. A. (N. S.), 1030; *Wineland* v. *Knights of Maccabees of World,* 148 Mich., 608, 112 N. W., 696.

Our own Supreme Court has settled the question in the case of *Tisch* v. *The Protected Home Circle,* 72 Ohio St., 233, 74 N. E., 188. Hence it follows that the plaintiff in error had a right to amend its by-laws after the decedent became a member, and that he and his beneficiary would be bound thereby.

The by-laws of the association provide, among other things, that:

''There shall be no liability when disease, defect

or bodily infirmity is a contributing cause of death.''

They further provide that there shall be no liability, unless the accident alone resulted in producing visible, external marks of injury or violence suffered by the body of the member, nor unless the death or disability resulted wholly from the injury. The petition in this case states that the decedent, Arthur J. Weir, became a member of the National Association of Railway Postal Clerks, and that, upon his application, was issued beneficiary certificate of said association No. 3025, a copy of which is attached to the petition; that on August 16, 1924, the said Arthur J. Weir, at about 3 o'clock p. m., was driving his automobile on and along Madison avenue in the city of Toledo, Ohio, and as he approached the intersection thereof with Michigan street, in that city, an automobile owned by non-residents of the city of Toledo, Ohio, was so negligently and carelessly operated and driven as to collide violently with the rear of the automobile then being driven and operated by the said Arthur J. Weir, that, as a result, decedent received an injury which caused his death within five hours from the time of said accident. The evidence, however, shows that Mr. Weir was not driving his own automobile, but was riding in the rear seat thereof, with his daughter doing the driving. The petition further alleges that the name of the National Association of Railway Postal Clerks was afterwards changed to Railway Mail Association.

The original certificate issued to the decedent was for the sum of $3,000, but some time later, by an amendment to the rules and laws of the association, the amount was increased to $4,000.

The original petition prayed for judgment for $3,000, but at or before the beginning of the trial it was amended so as to conform with the amended rules of the association, and then asked for judgment for $4,000.

Plaintiff in error contends that the decedent died, not from an accident, as contemplated by the terms of the contract between the decedent and the association, but from a disease; that his death did not result alone from bodily injuries through "external, violent and accidental means"; that, if the decedent received any accidental injury on the date of his death, such injury did not cause or produce the disease, which at least contributed to his decease; and that the diseased condition of the decedent existed for a long time prior to the date of his death.

We have carefully examined the record, and must come to the conclusion that the death of Mr. Weir did not result alone from bodily injuries through external, violent, and accidental means, and that for some time prior to the date of his death he had been afflicted with diseases which contributed to his death, if not the sole cause of his death. The record discloses that, after the collision on Madison avenue, the decedent got out of the car in which he was riding, and had some conversation with the driver or occupants of the car in the rear, then reentered his own car, proceeded to the shopping district of the city, did some shopping, and returned to his home, and there died at about 9 o'clock in the evening; the accident having occurred at about 3 o'clock in the afternoon. Three physicians were called to testify in the court below; Dr. Rucker being called on behalf of the plaintiff below, and Drs. Ramsey and Neil testifying in behalf of the de-

fendant below. The medical testimony in some respects all points one way, and that is to the effect that the death of Mr. Weir was due to an embolus in the pulmonary artery, due to a sloughing off of a calcified area of atheromatous plaques of the aorta, and the lodging of them in the pulmonary artery. Dr. Rucker did not make a microscopic examination of the blood clot or embolus, nor did he take any more active part in the autopsy than that of a spectator. He did say, however, that in the autopsy several atheromatous plaques were found in Mr. Weir's aorta, and his testimony as to the cause of death was as follows:

"That this accident, the cause of this death, was due to an embolus in the pulmonary artery, due probably to a sloughing off of these little calcified areas of the atheromatous plaques of the aorta and lodging in the pulmonary artery. When this bit of calcified plaque lodged there, the blood stream was immediately stopped and began to coagulate, and, of course, a clot was formed behind the foreign body, and that caused an embolus, a thing which we know as an embolus, which is one of the causes of sudden death. To my mind, the embolus may have been caused immediately by the sudden shock which this man received in the accident; an increase of blood pressure occurring, which rapidly swept this embolus through the circulation into the pulmonary artery and lodged there, causing this embolus."

And upon cross-examination these questions were asked and answers given:

"Q. Now, any shock that Mr. Weir may have sustained on the day of his death, did they cause those plaques in the aortic arch? A. No * * *.

"Q. And the shock didn't cause it to form in the aorta, did it? A. No; not to form.

"Q. And, if there had been no such plaques in the aorta, this shock would not have caused his death? A. No, sir.

"Q. Those plaques could not form in a healthy artery? A. No.

"Q. So there was a diseased condition? A. Yes.

"Q. And from your knowledge and experience, about how long would you say that those plaques, including the one that caused the embolism, may have existed in the aortic arch prior to this death? A. Well, they may have existed 12 to 15 years, or they may have existed only a few years, 3 or 4.

"Q. Or just perhaps just a month or two? A. No; I don't think that short a duration; I think over years.

"Q. Do they grow very slowly, doctor? A. Yes; they do * * *.

"Q. Tell us, if you can, what causes them to grow at all? A. Degeneration of the intima occurs * * *.

"Q. Did you observe on the body any marks of external injury at all? A. No; I didn't * * *.

"Q. Did you see any evidence of ulcerations? A. Yes; there was some ulceration, on top of which were these calcified areas.

"Q. Now, I don't know if I asked you this question. If I didn't, I will ask you now: Had there been no plaques in the aortic arch that day, such a shock as described by you for Mr. Fraser would not have caused Mr. Weir's death, would it? A. No, sir * * *.

"Q. At all events, you are satisfied that Mr.

Weir's death occurred primarily from an embolus?
A. I think so."

The testimony of Dr. Ramsey discloses that he made a microscopic examination of the blood clot, and that this blood clot had formed several days before the death of Mr. Weir, and, in giving his opinion as to the cause of the death of Mr. Weir, Dr. Ramsey stated that this man had a diseased heart in which a clot formed, a piece of which broke off, and, getting into the pulmonary circulation, lodged in a blood vessel supplying the right lobe, and shut off the circulation of that area sufficiently to cause this man's death; that in his opinion the disease of the aorta was a factor in Mr. Weir's condition, but not the cause of the blood clot, for it was not possible for the plaque from the aorta to circulate in the systemic circuit through the capillaries, through the veins, and ultimately lodge in the pulmonary artery. He also testified that the clot had at least formed while the patient was alive, and the organism, by that is meant the organization of the fibrin in the clot, indicates that the clots must have been formed several days previous to the death. Dr. Neil testified that this was an organized blood clot, and one which had existed for longer than a week; that he also found a diseased condition of the heart, and numerous blood clots in the right ventricle; that he observed the plaques in the aortic arch, caused by a degeneration in the intima of the blood vessels, and he stated positively that, if one of those became detached, it could not finally lodge in the pulmonary artery. Both Dr. Ramsey and Dr. Neil testified that the bumping of the automobile in the afternoon

had nothing to do with the death of Mr. Weir, and all of the medical witnesses agree that death was due to an embolus, which embolus was produced by a physical something, whether plaque or clot, which came into existence through disease, either of the heart or aorta; that this disease and its manifestations in the form of clot or plaques had existed for a considerable time before Mr. Weir's death; and that without this diseased condition Mr. Weir would not have died. In view of this testimony, we are forced to the inevitable conclusion that the cause of the death of Mr. Weir was the result of the combined effects of the possible shock, giving it the most liberal view, and a pre-existing disease.

Indeed, we find no evidence tending to show that the shock caused the death of Mr. Weir. All the evidence tends to show that there was a diseased condition of the aorta resulting in the formation of plaques, and that the release of one or more of these plaques caused an embolism resulting in death, to which the disease was a contributing cause, and there was no evidence whatever tending to prove the contrary.

The record discloses no evidence showing any visible external marks of injury upon the body of the decedent.

The Supreme Court of Ohio in *Aetna Life Ins. Co.* v. *Dorney,* 68 Ohio St., 151, 27 N. E., 254, holds that no recovery could be had on an accident policy where a pre-existing disease had contributed to the death. It may be claimed that the *Dorney case* is in conflict with the case of *Rheinheimer* v. *Aetna Life Ins. Co.,* 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A. (N. S.), 245. However, a careful study of

the latter case will clearly show it to have been distinguished from the *Dorney case,* as is the instant case distinguishable from the case of *United States Casualty Co.* v. *Thrush,* 21 Ohio App., 129, 152 N. E., 796, decided March 20, 1926, by the Court of Appeals of Franklin county. In the case of *Western Commercial Travelers' Assn.* v. *Smith,* 85 F., 401, 40 L. R. A., 653, the United States Circuit Court of Appeals of the Eighth District laid down the rule as follows:

"If the deceased suffered an accident, but at the time he sustained it he was already suffering from a disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected by the disease or infirmity, but he died because the accident aggravated the disease, or the disease aggravated the effects of the accident, as in the case of the insured who was subject to such a bodily infirmity that a short run, followed by stooping, which would not have injured a healthy man, produced apoplexy (*Insurance Co.* v. *Selden,* 24 C. C. A., 92, 78 F., 285), the association was exempt from liability, because the death was caused partly by disease and partly by accident."

See, also, *Maryland Casualty Co.* v. *Morrow* (C. C. A.), 213 F., 599, 52 L. R. A. (N. S.), 1213; *Rathman* v. *New Amsterdam Casualty Co.,* 186 Mich., 115, 152 N. W., 983, L. R. A., 1915E, 980, Ann. Cas. 1917C, 459; *Penn* v. *Standard Life & Accidental Ins. Co.,* 158 N. C., 29, 73 S. E., 99, 42 L. R. A. (N. S.), 593; *Stanton* v. *Travelers' Ins. Co.,* 83 Conn., 708, 78 A., 317, 34 L. R. A. (N. S.), 445; *New Amsterdam Casualty Co.* v. *Johnson, Admx.,* 91 Ohio St., 155, 110 N. E., 475, L. R. A., 1916B, 1018.

App.]                Shoe Stores Co. *v.* Scully.

In view of the undisputed facts as disclosed by the evidence in this case, the judgment of the common pleas court will be reversed, and final judgment entered for the plaintiff in error.

*Judgment reversed and judgment for plaintiff in error.*

RICHARDS and WILLIAMS, JJ., concur.