26608. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.* UPCHURCH.

Decided February 28, 1938.

*Hendrix & Buchanan,* for plaintiff in error.
*J. V. Poole, Talmadge, Fraser & Camp,* contra.

Stephens, P. J. Mrs. Marie Lane Upchurch instituted suit against National Life and Accident Insurance Company to recover in the sum of $2500 under a double-indemnity provision of a policy issued to her husband, Benjamin Franklin Upchurch, in which she was the beneficiary. This clause of the policy reads as follows: "The insurer agrees to pay the beneficiary of record under the policy hereinafter referred to, in addition to the sum insured thereunder, a like amount in like manner (making a total of double the said sum) in the event of the insured's death resulting within ninety days, directly, and independently of all other causes, from bodily injury evidenced by a visible contusion or wound on the exterior of the body or by internal injuries revealed by autopsy, effected directly through external, violent, and purely accidental

means, not as a result which follows from ordinary means, voluntarily employed in a not unusual or unexpected way and not caused by or contributed to, directly or indirectly, or wholly or partially, by any disease or mental infirmity contracted either before or after the injury." She alleges that her husband received physical injuries as a result of a fall down a flight of steps, which, directly and independently of all other causes, proximately caused his death. On the trial of the case a verdict in the sum of $2500, the amount sued for, was found for the plaintiff. The defendant moved for a new trial on the general grounds only.

The sole question presented by the record for decision by this court is whether the evidence adduced on the trial was sufficient to authorize the jury to find that the death of the plaintiff's husband was proximately caused from a bodily injury of the character described in the double-indemnity clause, which was effected directly through external, violent, and purely accidental means, and was not caused by, or contributed to, directly or indirectly or wholly or partially, by any disease contracted either before or after the injury.

It appears from the evidence that on or about December 1, 1936, the plaintiff's husband, while engaged in his duties as a traveling salesman, fell down a flight of steps and received severe physical injuries to his left knee and left ankle, that for several days afterwards he was able to get about and to see the doctor, and went back to work, but still continued to suffer from the injuries; that he became worse and went to a hospital, that afterwards he developed pains in both legs and in his back, that, according to the doctor's diagnosis, he was suffering from acute arthritis, a germ disease, which affects the joints, that on December 23, 1936, afterwards, he died. It appeared from the evidence that two years earlier, in 1934, the plaintiff's husband had arthritis in his left ankle and left knee, which lasted four or five days, that, he had entirely recovered therefrom before his injury; that afterward, and before his injury in 1936, he had not been sick, and had not lost any time from his work which required him to do much traveling in an automobile truck calling on customers, taking orders and making deliveries, etc.; that he did other physical work such as cultivating a garden and other manual labor. While there is evidence that the arthritis developed from germs of the disease which

were in his system prior to his injury, there was testimony from physicians that the germs could be encapsuled in a person's body, or be dormant, and the person would not suffer from the disease. While there was medical testimony to the effect that the death of the plaintiff's husband was caused from the arthritis, and while the evidence may have been sufficient to authorize a finding by the jury that arthritis caused the death, or was a contributory cause thereof, there was nevertheless testimony to the effect that the physical injuries which the plaintiff's husband received from the fall caused the encapsuled or dormant germs of arthritis which were in the system to flare up and develop the disease. The physician who treated the plaintiff's husband during his last illness testified: "It is my opinion that Mr. Upchurch had arthritis in an arrested condition before he had his fall. . . I think the sprain of the ankle caused a flare up of the arthritis which was already in his system. . . The sprain of an ankle would not cause arthritis per se, but the arthritis, while not caused by the sprained ankle, was again set into activity. I don't think there is any way to tell whether it was set into activity by his fall or by exposure on this cold day; I thought it was a predisposing cause, and either one could have been the proximate cause of the arthritis." Another physician testified: "If a man had arthritis in 1934, and recovered from it and went back to work, and there was no history of any fall or sprain, and in 1936 he had a sprain and it flared up in his left ankle and knee, I would think that he had the germs in his system at the time he had the fall if it developed in four or five days. I would think the injury caused these germs to be active in the joint involved that were not active before." Another doctor testified: "Where a man had acute infectious arthritis in 1934, had worked hard and continued well, and on December 1, 1936, made a trip and made fifty or sixty calls on customers, covering a territory of forty or fifty miles, the weather was extremely cold, it was sleeting, he weighed something over two hundred pounds, and he developed arthritis that night in his left knee and left ankle, and he had sustained a fall that day and sprained his right ankle . . under those statements and limiting the answer strictly to the question as propounded, I would say that it would be just as likely that the arthritis was due to the lowered resistance from the extreme cold weather as to the

fact that he had this fall; but if the sprain and the swelling was in the left ankle, the same member that was affected two years before, from which he recovered, and if it was a cold day, and if he had a violent fall down four steps, which sprained his ankle, then I would say that the fall was the predominating factor, rather than the cold weather."

The condition of the plaintiff's husband prior to the injury by which he contained in his system encapsuled or dormant germs of arthritis did not constitute a disease. The evidence therefore was sufficient to authorize a finding by the jury that the plaintiff's husband was perfectly well and did not have arthritis or any other disease prior to the fall which caused his injury, and that the arthritis which developed after the injury was directly caused by the injury.

It was held in *Banker's Health & Life Ins. Co.* v. *Smith,* 54 *Ga. App.* 525 (188 S. E. 463), that "the intervention of the disease between the injury and the death, where the disease is directly caused by the injury, does not break the proximately causal connection between the injury and the death," and that "liability is not denied under this clause of the policy [a double-indemnity clause similar to the clause in the case at bar] where the accidental injury is the direct cause of the disease which afterwards caused the death." See also *Hall* v. *General Accident Assur. Cor.,* 16 *Ga. App.* 66 (85 S. E. 600); New Amsterdam Casualty Co. *v.* Shields, 155 Fed. 54.

The evidence was sufficient to authorize the inference that the injury, and not the disease, was the proximate cause of the death. The verdict for the plaintiff was authorized, and the court did not err in overruling the defendant's motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*