29377.   METROPOLITAN CASUALTY INSURANCE
COMPANY *v.* REESE.

DECIDED JULY 16, 1942.

*Bryan, Middlebrooks & Carter, Yantis C. Mitchell,* for plaintiff in error. *Victor K. Meador,* contra.

BROYLES, C. J. (After stating the foregoing facts.) The evidence disclosed the following undisputed facts: The insured, on March 5, 1941, was injured by an accident as stated in the petition, and was removed to the hospital where he died on March 27, 1941. His injuries consisted of "fractures of the right transverse process of the third and fourth lumbar vertebræ; laceration of the palm of his left hand; complete dislocation of the bones of the middle and ring fingers, and multiple contusions and abrasions of the body." He was treated at the hospital by Dr. Timberlake. At first the patient was confined to his bed, but he recovered to such an extent that the doctor allowed him to get up and sit around in the hospital; and, as stated by the doctor from the witness stand, "he was what we call a convalescent patient." The doctor also testified that the most serious part of the patient's injuries was the injury to his transverse process, that such an injury was very painful and very similar to the fracture of a rib, but that such injuries as fractured ribs, broken vertebræ, or fractured vertebræ are usually not dangerous, without complications. The above-stated evidence of Dr. Timberlake was uncontradicted.

The insurance company introduced in evidence a properly certified copy of the death certificate signed by Dr. Timberlake. In that certificate the cause of the death of Jack Reese was stated as follows: "Primary cause of death: Coronary thrombosis. Contributing causes: hypertension, arteriosclerosis." The certificate also contained the following statement: "On March 5, 1941, the deceased was brought to my office with fracture of transverse process of third and fourth vertebræ; deep jagged laceration of palm of left hand, with complete dislocation of left middle and ring fingers; tearing of metacarpophalangeal palmer ligaments, and multiple contusions and abrasions of body, due to an accident which he sustained on the same date when he got shocked by electricity and fell six feet into a pile of bricks. [He] was making normal recovery from injury and died suddenly of heart failure—was up out of bed at time of death." Dr. Timberlake testified that he signed the death certificate; that "coronary thrombosis" means heart failure and is caused by a blood clot in the artery to the heart. He testified further: "I only gave hypertension as a contributing cause of

his death. I say he had coronary thrombosis. . . He didn't die from the accident itself. He died three weeks later but when he was in the hospital being treated for broken bones. He was recovering from the accident. . . As to whether or not I had any doubt about his having had hypertension before the accident . . I would judge he had it. . . Any one suffering from high blood pressure can die at any time, regardless of any accident. The only connection I make of the accident with his death was that it *might have* increased his high blood pressure." (Italics ours.) The evidence was undisputed that at the time of the accident the insured was suffering from a two years' pre-existing heart trouble and high blood pressure. In our opinion the undisputed evidence, including the death certificate, demanded a finding that the pre-existing diseases of the insured either *caused* his death or *substantially contributed thereto*. Therefore, under the provisions of the policy that the company would be liable for the death of the insured only if the death resulted, *directly and exclusively of all other causes,* from an accidental injury, a verdict for the defendant was demanded.

It is true that Dr. Timberlake, the only physician who testified, did not expressly state that in his opinion the accident to the insured did not accelerate or aggravate his injury nor hasten his death. Neither did he testify that in his opinion the accident did accelerate or aggravate the injury or hasten the death. However, the burden was on the plaintiff to prove that the death resulted *directly and exclusively of all other causes* from the injuries sustained in the accident. Furthermore, when the defendant introduced in evidence a properly certified copy of the death certificate, a prima facie case was established that the cause of the death was the cause given in the certificate. Code § 88-1212. Therefore, the further burden was then upon the plaintiff to overcome the prima facie case by the introduction of competent evidence of probative value showing that the cause of death was not the cause stated in the death certificate. *Woodruff* v. *American Mutual Liability Insurance Co.,* 67 *Ga. App.* 554 (21 S. E. 2d, ). This burden the plaintiff failed to carry.

The case of *Hall* v. *General Accident Assurance Corporation,* 16 *Ga. App.* 66 (85 S. E. 600), relied on by the defendant in error, is distinguished by its facts from this case. There, it appeared that the insurance company should have known of the two-years

pre-existing disease (an incurable chronic Bright's disease) of the insured, because it had him examined by a physician before it issued the policy, only twenty-six days before the accident which caused his death. It also appeared in that case that the insured died a week after his injury, and that his condition after the accident gradually grew worse until his death. In the instant case the insured had steadily improved after his removal to the hospital, had gotten out of bed, was sitting up, was convalescing, and apparently was on the road to a normal recovery, when suddenly, while sitting up, he was stricken by heart failure and died almost instantly. The rulings in the *Hall* case will not be extended to cover the facts of this case. The court erred in denying a new trial. *Judgment reversed. MacIntyre and Gardner, JJ., concur.*