### 40043.   PIPPIN v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

DECIDED NOVEMBER 26, 1963—REHEARING DENIED
DECEMBER 11, 1963.

*Hilton & Hilton, L. H. Hilton,* for plaintiff in error.

*Bouhan, Lawrence, Williams, Levy & McAlpin, Walter C. Hartridge, II, Howard & Hunter, Harry Hunter,* contra.

PANNELL, Judge. Plaintiff in error here, and plaintiff in the court below, Elizabeth M. Pippin, brought an action against the Mutual Life Insurance Company of New York, as beneficiary named in the life insurance policy issued on the life of plaintiff's mother, Mary Morrison, seeking to recover double indemnity for accidental death. The policy sued upon contained the following provisions: "The double indemnity will be payable upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; *provided that the Double Indemnity shall not be payable if death resulted* from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity." (Emphasis supplied).

After answering the petition the defendant filed its motion for summary judgment attaching thereto a certificate of death, signed by Dr. Agostas and dated November 11, 1961, showing that the insured died on October 14, 1961, and that the cause of death was as follows: "Part 1. Death was caused by: Immediate cause (a) bronchial pneumonia - Interval between onset and death—3 days," and, under "Conditions which give rise to above cause (a) stating the underlying cause last," the death certificate shows, "(6) Due to hemorrhagic acute esophagitis, severe—Interval between onset and death—24 hours," and then "Due to (c) perivascular atrophy of the brain—interval between onset and death—2-3 months," and under Part 2, "Other significant conditions contributing to death but not related to the terminal disease condition given in Part 1 (a) Fracture, left hip."

There was also attached to the motion for summary judgment an affidavit of Dr. James C. Freeman, as follows: "Deponent is a duly licensed practicing physician in Sylvania, Screven County, Georgia, and has been so engaged for a period in excess of ten years. Deponent avers that the late Mrs. Magdalene Patrick was a patient of his, who was admitted by deponent as a patient in Screven County Hospital on the 30th day of July, 1961, for cerebral arteriosclerosis and senile dementia. Deponent treated Mrs. Magdalene Patrick for the diseases hereinabove enumerated until she sustained a fractured hip on or about the 11th day of October, 1962, at which time patient was dismissed for further hospitalization and treatment in Augusta, Georgia, for her fractured hip."

Also attached was an affidavit of Mrs. Willie Mae Waters as follows: "My name is Mrs. Willie Mae Waters. I am a practical nurse in Sylvania and Screven County, Georgia. I nursed Mrs. W. T. Patrick from July 30, 1961, on almost every night thereafter through October 11, 1961. During the time that I nursed her she was almost uncontrollable most of the time. She talked wildly, she was nervous, and it usually required two people to hold her in order to give her a shot to calm her down. At about 4:30 or 4:45 a.m. on the morning of October 12, 1961, Mrs. Patrick awoke after having been asleep under prescribed medication consisting of 25 milligrams of Liertene and 25 milligrams of Phenergan. She awoke and indicated to me that she wanted to go to the bathroom. I assisted her from the right side of the bed by supporting her by putting my hands under her armpits. It was my plan to walk her around the foot of the bed to the bathroom, which was opposite the left-hand side of the bed. We were in the process of beginning to walk when she suddenly whirled out of my arms to the right and fell to the floor on her left hip. I got assistance in putting her back into the bed."

Plaintiff introduced in evidence at the summary judgment hearing the depositions of Dr. William Agostas, who filed the death certificate. His testimony showed that he first saw the deceased on October 12, 1961, and that at the time of his initial examination of the deceased she was in a semi-stuporous state

and the description is as follows: "Semi-stuporous, emaciated elderly white female in evident marked dehydration. Further physical examination revealed blood pressure 100/70, pulse 72. There were slight spasms of the neck muscles; there was a small nodule in the midline of the thyroid gland. Examination of the heart showed rapid rhythm without gallop. The lungs were clear. This examination of the lungs is not entirely satisfactory, but they were essentially clear. The skin showed very poor turgor, confirmatory of dehydration. My impressions were those of fracture of the left hip, as stated by Doctor Carswell; and chronic brain syndrome, possible senile arteriosclerotic." Dr. Agostas further testified that on his first examination there was no evidence of existing pneumonia and that the insured died October 14, 1961 at 7:30 p.m.: that he examined the patient again on October 13, 1961, at 11:10 a.m. and that in view of a continued state of semi-stupor, he suggested that surgery be delayed; that on October 14, 1961, she was somewhat clearer of mind; that later that day, about 6:30 p.m. he saw the patient and the blood pressure and pulse were unobtainable. He first knew that the deceased had pneumonia because of the autopsy examination. That in his opinion bronchial pneumonia was the immediate cause of death, and when asked to state his opinion as to what was the cause of bronchial pneumonia he stated that in his opinion it was related to the causes for bed rest and perhaps related to aspiration of regurgitated material from the stomach; that the fracture of her hip was a big factor in the development of pneumonia; that when a person for any reason fails to eat regularly, and that includes liquid nourishment as well as solid, there may be production of digestive juices in the stomach and the intestinal tract which may be regurgitated upward into the esophagus; that when a person is suffering from a chronic brain syndrome and is also semi-stuporous, it is possible for this material to be drawn into the lungs; that the autopsy examination shows that gastric contents were found in the bronchial tubes—this may result in pneumonia, and may be a factor in this case, but the extent of the gastric contents would be more valuable than the fact that there were some contents. Perivascular atrophy of the brain would be a slowly

developing process not related to trauma; that the broken hip was a cause of the pneumonia; her general physical and mental condition would play a significant part in an invitation to pneumonia, in addition to her broken hip. Most people who have fractured hips do not contract pneumonia. It was not his opinion that the fractured hip was the sole, independent cause, independent of all other possible causes, of the pneumonia; that he had received no other records or information which would change his opinion today from that given on the death certificate filed by him when the patient died; that it is his opinion that the broken hip was not the sole, independent cause, independent of all other possible causes, of this pneumonia; that if she had been given sedatives prior to the time he first saw her that might well have to do with her semi-stuporous state. People who are not in the best of health and who suffer a fractured hip may be more susceptible to pneumonia, and younger people in the very best of health at the time of having a broken hip, if they remain in bed for an unusual length of time without turning over are susceptible to pneumonia; that an elderly person tolerates inactivity and bed rest less well and is more prone to complications from this than a younger person; and, that the acute hemorrhagic esophagitis was not the immediate cause of death.

The trial judge granted the defendant's motion for summary judgment and the case is before this court on exception to such judgment.

The defendant relies upon the following cases as establishing rules of proof which, when applied to the evidence in this case, would demand a finding in favor of the defendant insurer. These cases are: *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453 (99 SE2d 823), overruling *Prudential Ins. Co. of America v. Kellar*, 95 Ga. App. 332 (98 SE2d 90); *Miller v. Life & Cas. Ins. Co. of Tenn.*, 102 Ga. App. 655 (117 SE2d 237); and, *Harris v. Metropolitan Life Ins. Co.*, 66 Ga. App. 761 (19 SE2d 199). The plaintiff relies upon certain cases which he contends establish different rules of proof and which are applicable to the present case, and when applied to the evidence in the case would authorize a finding by the jury in favor of the plaintiff. These

cases ⁰are: *Hall v. General Accident Assurance Corp.*, 16 Ga. App. 66 (85 SE 600) ; *Thornton v. Travelers Ins. Co.*, 116 Ga. 121 (42 SE 287, 94 ASR 99) ; *Bankers Health &c. Ins. Co. v. Smith*, 54 Ga. App. 525 (188 SE 463) ; *Pacific Mut. Life Ins. Co. v. Meldrim*, 24 Ga. App. 487 (101 SE 305) ; *Atlanta Accident Assn. v. Alexander*, 104 Ga. 709 (30 SE 939, 42 LRA 188) ; *Mutual Savings Life Ins. Co. v. Hines*, 96 Ga. App. 442 (100 SE2d 466) ; *Inter-Ocean Cas. Co. v. Scott*, 91 Ga. App. 311 (85 SE2d 452). See also the following: *Continental Cas. Co. v. Rucker*, 50 Ga. App. 694 (179 SE 269) ; *Johnson v. Aetna Life Ins. Co.*, 66 Ga. App. 629 (18 SE2d 777) ; *Metropolitan Cas. Ins. Co. v. Reese*, 67 Ga. App. 628 (21 SE2d 455) ; *Gulf Life Ins. Co. v. Braswell*, 101 Ga. App. 133 (112 SE2d 804) ; *Reserve Life Ins. Co. v. Poole*, 99 Ga. App. 83 (107 SE2d 887).

An examination of the above cited cases discloses that in order to properly answer the questions presented it is necessary first to determine what might be the rules of proof applicable under the insuring and exclusion clauses of the policy in the instant case. We will not concern ourselves with the underlying facts in the cases but with rules of evidence or proof only, as these may be derived from the language of the policy. These cases seem to group themselves into three categories: (1) where there is an insuring clause only, insuring against injury or death caused solely by accidental means; (2) those cases with an exclusion clause excluding injuries or death caused directly or indirectly, in whole or in part, by disease, or particular disease, or mental infirmity; and, (3) those cases excluding injury or death caused *or contributed to* by disease or infirmity.

In *Thornton v. Travelers Ins. Co.*, 116 Ga. 121, supra, in a policy providing that the "insurance shall not cover . . . accident, nor injuries, nor death, nor loss of limb or sight, resulting wholly or partly, directly or indirectly, . . . from hernia," and the insured had, at the time of the injury for which indemnity is claimed, an existing hernia in his system, the Supreme Court held "it is incumbent upon the company after it has been prima facie shown that an injury to the plaintiff resulted from an accident within the meaning of the policy, to show that the existence of the hernia at that time was a *sub-*

*stantial contributing cause,* which wholly or partly, directly or indirectly, brought about the injury resulting from the accident, and *liability under the policy is not defeated by showing simply that the existence of the hernia rendered more serious the consequences* resulting from the accident," and on page 130, said, "If upon another trial of the case it should be made to appear that the fact that the plaintiff had at the time of the injury a reducible hernia did not *substantially contribute* to the injury, he will be entitled to recover notwithstanding it might appear that the consequences resulting from the injury might have been more serious on account of the presence of the hernia than they would have been if the plaintiff had been free from this infirmity. On the other hand, if it should be made to appear that the existence of the hernia in the system of the insured was a *substantial contributing cause* in bringing about the injury, and the injury was the result, either in whole or in part, directly or indirectly, from the fact that at the time it was inflicted the insured had within his system the reducible hernia, then the defendant would have made out its defense, and the plaintiff would not be entitled to recover." (Two Justices dissented from this ruling.) This case was followed and some of the obiter dicta therein approved by this court in *Hall v. General Accident Assurance Corp.,* 16 Ga. App. 66, supra; *Pacific Mut. Life Ins. Co. v. Meldrim,* 24 Ga. App. 487, supra; *Inter-Ocean Cas. Co. v. Scott,* 91 Ga. App. 311, supra. In the *Hall* case, 16 Ga. App. 66, 67 (3), supra, this court said: "Upon the evidence adduced, the plaintiff was entitled to have the court submit to the jury the issue of fact as to whether the accidental injury or a pre-existing ailment was the *proximate cause* of the death of the insured, with an instruction that to entitle the plaintiff to recover, the jury must be satisfied that the alleged injury was the *proximate cause* of the death. Whether the injury was the *proximate cause* was purely a question of fact, for it involved a determination, upon evidence, of the relations between the alleged causes and effects, and nothing more; and not only might the jury have found that one of the causes was a mere condition, *but when two or more causes may have contributed to an injury,* and there is doubt, or the facts are of such a character that equally prudent persons

would draw different conclusions, *as to which of the contributing causes was the efficient, dominant, and proximate cause, the question should be submitted to the jury."* (Emphasis supplied). And, further, on page 72: "If there was only one proximate cause of the bodily injury and this was brought about by 'external, violent, and accidental means,' such as an accidental slipping and falling, the insurance company would be liable upon its contract without regard to the fact that the assured was badly diseased and that the results of the fall in his case would naturally be more serious than if he had been in perfectly good health and a young man. Cases can be imagined where one of two young men (both supposed to be in excellent health) might survive without shock an injury effected through external, violent, and accidental means, while the other, having a weak heart, might collapse and die from fright in the presence of imminent and appalling danger. We think the circumstances in proof were sufficient to have required the case to be submitted to the jury, since the question of proximate cause is peculiarly a jury question; and that the learned trial judge erred when he 'chopped off' the case by the 'mechanical process of nonsuit.' " The *Hall* case and *Thornton* case are both cited with approval in *Pacific Mut. Life Ins. Co. v. Meldrim*, 24 Ga. App. 487, supra, a case on demurrer, where the insurance policy had no exclusion clause. Judge Jenkins dissented in that case. In *Harris v. Metropolitan Life Ins. Co.*, 66 Ga. App. 761, supra, the policy contained an exclusion clause providing that "no accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused *or contributed to,* directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity," and this court said that, *"Under this provision the distinction between the primary cause and the secondary cause of death is wholly immaterial. If the death was caused or contributed to, directly or indirectly, or wholly or partially, by disease, there can be no recovery."* (Emphasis supplied). And the *Thornton* and *Hall* cases were distinguished primarily on the ground that the language in the policy in the *Harris* case contained the words, "or contributed to," and the court called attention to several de-

cisions of this court which had considered policies containing such provisions but had not decided the question raised in the *Harris* case, these cases being as follows: *Bankers Health &c. Ins. Co. v. Smith*, 54 Ga. App. 525, supra; *National Life &c. Ins. Co. v. Upchurch*, 57 Ga. App. 399 (195 SE 588); *Haugabrooks v. Metropolitan Life Ins. Co.*, 63 Ga. App. 829 (12 SE2d 163). In *Bankers Health &c. Ins. Co. v. Smith*, 54 Ga. App. 525, supra, this court, in the headnote, said, "Where a policy insures against death, 'as the result of bodily injury sustained solely through violent, external and accidental means,' and provides that no accidental death benefit will be paid if the death of insured 'is caused or contributed to, directly or indirectly, or wholly or partially, by disease,' this latter provision of the policy must be construed as denying liability for a death resulting from accident only where the disease *proximately contributes to* or causes the death." And, in the opinion (page 526) said, "The mere fact that the accident did not directly and immediately cause the death, but directly caused the disease, pneumonia, which caused the death, does not necessarily break the causal connection between the accident and the death. Otherwise, the death of the insured would have to occur instantly or immediately after the accident. It is hardly conceivable that a death occurring at an appreciable interval of time after the accident would not in some manner be contributed to by a disease." In *National Life &c. Ins. Co. v. Upchurch*, 57 Ga. App. 399, supra, involving a similar clause, this court in the headnote said: "The evidence was sufficient to authorize the jury to find that the disease which caused the death of the insured was caused by physical injuries received by the insured, and that such injuries, and not the disease, were the *proximate cause* of the death." The *Harris* case was followed in *Miller v. Life & Cas. Co. of Tenn.*, 102 Ga. App. 655, supra, and in *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453, supra, overruling *Prudential Ins. Co. of America v. Kellar*, 95 Ga. App. 332, supra.

In the *Prudential Ins. Co.* case, 213 Ga. 453, the Supreme Court followed the rule set forth in the *Harris* case, even though the language, "or contributed to," was not in the exclusion provision of the policy as was true in the *Harris* case, the exclusion provision of the policy in the *Prudential Ins. Co.* case being very

similar to the one in the case now before this court. The court also quoted with approval the following from Appleman on Insurance Law & Practice, Vol. I, p. 494, § 403, "From this, it has been held that where a diseased condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is the cause of 'death or disability. This has been particularly supported where the death or disability would not have resulted from the external injury alone, but, with the combination of injury and disease, the loss is reduced." The Supreme Court thus seemingly applied the rule, announced in cases where the exclusion clause contained the words, "or contributed to," to a case which did not have such exclusion clause, although this court has made rulings in several cases based primarily on such a clause. See, in this connection, *Miller v. Life & Cas. Ins. Co. of Tenn.*, 102 Ga. App. 655, supra, and *Harris v. Metropolitan Life Ins. Co.*, 66 Ga. App. 761, supra. (Two Justices dissented in the *Prudential Ins. Co.* case.)

This court, in *McCarthy v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178 (2) (129 SE2d 408), decided a case involving a motion by defendant for summary judgment by holding that the evidence authorized the submission of the case to the jury, and said: "Where a plaintiff in a civil case supports his case solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied on. There must be more than a 'scintilla' of circumstances to carry the case to the jury. It is for the court to say whether the circumstances reasonably establish the hypothesis relied on by the plaintiff. If the evidence meets this test, it is then for the jury to say, either that the plaintiff has not carried his burden of proof because the evidence equally supports his hypothesis and some other reasonable hypothesis, or that the plaintiff has carried his burden of proof in that the evidence preponderates to his hypothesis as against all other reasonable but less probable hypotheses."

Irrespective of which of these cases might be controlling as to the construction to be placed upon the insuring and exclusion clauses of the policy sued upon, and irrespective of the degree

of proof required in accordance therewith to show a right of recovery under the policy, it is our opinion that the evidence adduced at the hearing on the motion by the defendant insurance company for summary judgment is sufficient to authorize a finding for the plaintiff and that such conclusion is consistent with the rulings in all of the cases cited. We reach this conclusion for the reason that the evidence would authorize a finding that the fall was accidental and was the proximate cause of death on the one hand, and would authorize a finding that neither the fall nor the death was contributed to by disease or mental infirmity, from which the insured might have been suffering at the time of the fall, on the other hand.

The defendant insurer contends that the affidavit of the practical nurse that during the time she nursed the deceased (July 30, 1961, to October 11, 1961), the deceased was almost uncontrollable most of the time, that she talked wildly, was nervous and it usually required two people to hold her in order to give her a shot to calm her down; and that while she was assisting the deceased to the bathroom the deceased "suddenly whirled" out of her arms to the right and fell to the floor on her left hip, demands a finding that the fall was caused by the mental and physical condition of the insured. This evidence does not conclusively establish that the sudden whirling caused the fall or that the sudden whirling was caused by disease or infirmity.

There is no dispute that pneumonia was the immediate cause of death. There is a dispute as to the cause of the pneumonia. The insurer contends that the pneumonia was caused by vomiting, which, in turn, was caused by a mental infirmity inducing a semi-stuporous state which the insured had at the time of a fall in which she broke her hip. The beneficiary under the policy contends that the pneumonia was not caused by the vomiting but by bed rest necessitated by the breaking of the hip. Two problems, therefore, are presented: (1) Does the evidence in the case authorize the factual conclusions contended by the beneficiary, and, if so, (2) do these factual conclusions authorize a verdict for plaintiff under the terms of the policy?

" 'An expert may aid the jury, but he cannot perform the functions of a juror and, under the guise of giving testimony,

state a legal conclusion. An expert may give his opinion as to medical facts, but he cannot determine the legal classification of such facts and testify as to what was or was not "a contributing cause" of an injury.' *Travelers &c. Co. v. Thornton*, 119 Ga. 455 (46 SE 678). Even if the physician could testify categorically in the present case that the fall was not the sole and exclusive cause of the death of the deceased, that evidence, under the rule as to the probative value of opinion evidence, would not have demanded a verdict in favor of the defendant or authorized the award of a nonsuit." *Hall v. General Accident Assurance Corp.*, 16 Ga. App. 66, 80-81, supra. We are here dealing with the effect of testimony and not its admissibility, and nothing here ruled is in conflict with the decision of the Supreme Court in *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1 (3) (5 SE2d 214). It follows, therefore, that for the purpose of determining whether the evidence in the case demanded a finding in favor of the insurer we must examine the rest of the testimony and evidence in the case.

While under the terms of Section 18 of the Act of 1945 (Ga. L. 1945, pp. 236, 242; *Code Ann.* § 88-1118), death certificates filed under the provisions thereof are "prima facie evidence of the facts stated therein," such presumption is rebuttable, *McWaters v. Employers Liability Assurance Corp.*, 73 Ga. App. 586 (37 SE2d 430) ; *Davis v. Atlantic Steel Corp.*, 91 Ga. App. 102 (84 SE2d 839) ; *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453, supra.

The certificate of death in the present case contains a contradiction which, to that extent, militates against the presumption. According to the certificate the bronchial pneumonia which was the immediate cause of death was due to hemorrhagic acute esophagitis severe (vomiting), yet the certificate shows that the deceased had pneumonia for three days before the death and had hemorrhagic esophagitis severe only 24 hours before death. The death certificate, therefore, does not establish prima facie that the pneumonia was caused by hemorrhagic acute esophagitis severe, but is sufficient to authorize a finding that it was not so caused. The doctor who signed the death certificate, while testifying that nothing had changed his opinion of the causes of

death as shown in the certificate of death, also testified that in his opinion the fractured hip was a big factor in the development of pneumonia. Under this evidence, a jury would be authorized to find that the senile mental and physical condition which the insured had at the time of the fall was neither the cause of, nor contributed to, the fall or the bronchial pneumonia which was the immediate cause of death.

It follows, therefore, that the trial court erred in sustaining the defendant insurance company's motion for summary judgment.

*Judgment reversed. Bell, P. J., and Hall, J., concur.*