40562. BUSINESSMEN'S ASSURANCE COMPANY OF AMERICA v. TILLEY.

530

Decided March 4, 1964—
Rehearing denied April 3, 1964.

*Gleason & Brown, Frank M. Gleason,* for plaintiff in error.
*William Butt, Herman J. Spence, Ralph V. Roper,* contra.

Russell, Judge. ■ The general demurrer is urged on the basis that the plaintiff, while attempting to sue in tort, has failed to set out more than an action for breach of contract, under the ruling in *Leonard v. Firemen's Ins. Co.,* 100 Ga. App. 434 (111 SE2d 773). That petition, alleging a contract of automobile liability and extended coverage insurance was brought on the theory that the defendant was negligent in failing to offer the plaintiff an adequate and proper adjustment of the loss as a result of which the plaintiff was damaged by being deprived

of the use of the vehicle, for the value of the loss of use of which he sued. This was a tort action. The headnote states: "The remedy afforded to policyholders by *Code* § 56-706 for penalties in the amount of 25% of the loss, plus reasonable attorney's fees, is exclusive." Here the plaintiff alleges a contract, a breach of the contract by failure to pay the sums agreed upon in the amount of $150 per month for total disability, and seeks the statutory penalty only in addition thereto. It is accordingly a contract action. The action does not sound in tort, and the general demurrer was properly overruled.

■ Where the contract of insurance covers accidental death effected through external, violent, and accidental means independently of all other causes, and excludes death or disability resulting directly or indirectly from hernia, an unrelated bodily condition, unless the *injury* (as opposed to the ultimate disability) was a result of the hernia, there may be a recovery although the unrelated condition aggravated the results of the injury. *Thornton v. Travelers Ins. Co.*, 116 Ga. 121 (42 SE 287, 94 ASR 99). Where, on the other hand, under a policy which covers accidental death effected through external, violent, and accidental means directly and independently of all other causes, but excludes death resulting directly or indirectly from bodily or mental infirmity or disease in any form, and it appears also that the insured's death resulted from a bodily infirmity (myocardial infarction due to hypertensive cardiovascular disease) and in addition that the injury by accidental means (a broken leg) was not related to the injury causing the insured's death, there can be no recovery even though the injury may have contributed to the death. *Prudential Ins. Co. of America v. Kellar*, 213 Ga. 453 (99 SE2d 823). Established heart and arterial disease is frequently considered to be a physical infirmity or disease under policy provisions such as this, with the result that no recovery is allowed, and the words "bodily infirmity" mean no more than "disease." See Anno. 75 ALR2d 1238; McCarty v. Occidental Life Ins. Co., (Okla.) 268 P2d 221; Davis v. Jefferson Standard Life Ins. Co., 73 F2d 330; Bergeron v. Prudential Ins. Co., 96 N. H. 304 (75 A2d 709); The Maccabees v. Terry, (Fla.) 67 S2d 193; Travelers' Ins. Co. v. Selden, 78 F 285; Railway Mail

Assn. v. Weir, 24 Ohio App. 5 (156 NE 921). Arthritis cases, where the arthritis has not been symptomatic until after the injury, have, in the three cases brought to the attention of the court, been placed in a different category, but not for identical reasons. In the first of these, *National Life &c. Ins. Co. v. Upchurch,* 57 Ga. App. 399 (195 SE 588), (a case tried in 1937) the medical opinion evidence was to the effect that arthritis was a germ disease, but could be latent and unsymptomatic because the germs were "encapsuled" in the body; trauma would cause them to flare up and develop the disease. Recovery was allowed in that case under the "independently of all other causes" provision in the policy. The mythical germs turned into calcium deposits in the medical testimony in the present case, but the trend of the testimony is the same in both—that due to certain medical causes arthritis actually existed in the body, but was not symptomatic and not disabling until acted upon by an outside agency. In *Reserve Life Ins. Co. v. Poole,* 99 Ga. App. 83 (3) (107 SE2d 887) it was held: "Where the evidence showed that the insured suffered total disability as the result of injuries received in an accident which aggravated a pre-existing arthritic condition which was not, prior to the accident, disabling, such disability resulted directly and independently of all other causes from accidental bodily injury within the meaning of that term as used in the policy and the evidence authorized the verdict for the plaintiff." The policies in the *Poole* and *Upchurch* cases contained insuring provisions like those in this case but did not contain the exclusionary verbiage, "any loss . . . the results of which are contributed to" by bodily infirmity. The policy insures against loss which results from bodily injury, but it is difficult to give meaning to a phrase referring to results of the loss. Assuming that it simply means that loss contributed to by bodily infirmity or disease is involved, the language is very similar to that in *Upchurch,* from the coverage of which policy is excluded injury "contributed to, directly or indirectly or wholly or partially, by any disease . . . contracted either before or after the injury." The words "or after the injury" remove the case from the ambit of *Thornton* in the same manner that the language of *Kellar* ("if such resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form")

was held to do. In *Upchurch* the latent arthritic condition became symptomatic after a fall resulting in injuries to the knee and ankle; in *Poole* it followed a sacroiliac sprain resulting from a violent jerk of a railroad car. Here it resulted from a sacral sprain caused by heavy lifting. The evidence is undisputed in this case that osteo-arthritis results from calcium deposits over a period of years in the body, usually at joint areas; that this plaintiff had a considerable calcification particularly on the left side of the third sacral interspace; that after the injury he developed pain in this area radiating down the left leg; that a part of this pain might have resulted from the severity of the wrench to the back causing particles of calcified substance to crumble away from the bone; that the plaintiff was 55 years old; that he is permanently disabled and will not improve. Other medical testimony: "As to what briefly is osteo-arthritis; it's changes that we see in the spine, with roughening of the joint surfaces and projections of growth from the normal bone edges, so-called spur formations, and it's sometimes called hypertrophic changes. It is really a normal aging of the spine, of the bone. It occurs more frequently in those areas which are subject to repeated minor trauma, namely the neck, and the lower back region, where there is considerable motion normally, and more likely to have injuries. It is normally a progressive disease. It is aging of the bone that continues to progress with or without injury. As to whether there is any such thing as osteo-arthritis in a dormant state so far as the patient might be concerned; yes, I think that occurs most always, many people have a lot of X-ray changes and osteo-arthritis, and they think it is just the slowing down of old age, actually it is, but they don't have too much pain with it. . . . As to what effect can an injury have on one who has had a dormant type of osteo-arthritis; an injury will often be a precipitating factor that will initiate symptoms from an osteo-arthritic condition and they'll become very painful." Almost the same evidence appears in Todd v. Occidental Life Ins. Co., 208 Ore. 634 (303 P2d 492), a case where a latent osteo-arthritic condition appeared symptomatic with disabling consequences following an accidental injury to the plaintiff who suffered a sprain of the shoulder and neck while seated in a parked car which was hit from the rear. The terms of the policy

in Todd and here are substantially identical and both contain the exclusion of "death, disability or other loss caused or contributed to by bodily or mental infirmity or disease." The court was of the opinion that if the evidence demanded a finding that osteo-arthritis was such an infirmity, coverage should be denied, but pointed out that under the medical testimony in the case everyone over 50 years of age has osteo-arthritis to some degree, and the plaintiff was over 60 when he applied for the policy. "An accident insuring agency is not required to accept every person as a risk, and in preparing its policies it may exclude any risk as to any individual, but, unless it clearly points out the risks not assumed, it seems only logical that it accepts the risks of infirmity which are generally considered normal to mankind at the various stages of life, and therefore, that osteo-arthritis, which in common parlance may be considered normal from that which would be considered abnormal, cannot be considered as a concurring cause of disability. Therefore, under the evidence in this case, there was a question of fact to be determined." Id., p. 653. If every bodily weakness resulting from the normal wear and tear of living is such an infirmity as may "contribute to" a loss (i.e., death or disability) caused by accidental injury it is obvious that accident insurance benefits would substantially disappear except in cases where instant death resulted, a fact which the ordinary purchaser of an accident insurance policy does not intend as a part of his contract. Whether the osteo-arthritic condition which was precipitated by the injury here was a pre-existing disease or infirmity (that is, an abnormal condition) or whether it was a predisposing factor resulting from a normal aging process, was for the jury. A verdict for the defendant was not demanded as a matter of law. See also *Pippin v. Mutual Life Ins. Co.*, 108 Ga. App. 741 (134 SE2d 446). The motion for judgment notwithstanding the verdict was properly denied.

■ Error is assigned in the special ground of the motion for a new trial on the charge of the court relating to penalty and attorney fees (*Code Ann.* § 56-1206) on the grounds that the court failed in connection therewith to define bad faith, and because the insurance company was justified under its interpretation of the contract in refusing to pay. While error cannot be

assigned on a correct instruction because other correct instructions are not given in connection therewith, it is also true that "bad faith" means a frivolous and unfounded refusal to pay the claim. In view of our holding that the only substantial issue in the case (that is, whether evidence that osteo-arthritis which was pre-existing, but unknown, undetected, and nonsymptomatic until acted upon by the accidental bodily injury, and which in such form is a natural part of the aging process, is in fact a bodily infirmity or disease) is a jury question, it follows that the refusal to pay cannot be said to be capricious or frivolous, the defendant having a right to have this issue tried out in the court.

The overruling of the motion for a new trial is affirmed with direction that the sum of $246.25 awarded as penalty be stricken from the verdict and judgment.

*Judgment affirmed with direction. Nichols, P. J., and Hall, J., concur.*