41964. HARTFORD ACCIDENT & INDEMNITY COMPANY v. GRANT.

SUBMITTED MAY 2, 1966—DECIDED JUNE 2, 1966.

796

*Merritt & Pruitt, Glyndon C. Pruitt,* for appellant.
*Cheeley & Merritt, Joseph E. Cheeley,* for appellee.

FELTON, Chief Judge. ■ Although the record is complicated by the involvement of two different insurance policies and at least three separate injuries during the policy periods, there was evidence which authorized the finding that the insured sustained an injury on April 2, 1963, which was compensable under the accidental injury policy on which the action was brought. The insured testified that on that date he fell out of an automobile onto the ground, twisting his back, rendering him unconscious and causing pain in his lower back. Although the various medical testimony was somewhat conflicting as to whether the insured was totally disabled following the alleged injury of April 2, 1963, Dr. Kells Boland, who treated the insured on and

after said date and whose deceased brother had treated him for previous injuries, testified that, in his opinion, the insured was already totally disabled before said date; that the x-rays and objective findings indicated a somewhat worsened condition, including muscle spasm and sprain, following the alleged injury; that, although such condition could have been caused partially by arthritis, it was consistent with an injury such as the insured described; that such an injury would make the insured more likely to have the muscle spasm he found.

The policy provides for coverage "[w]ith respect to accidental bodily injuries sustained by the Insured while this policy is in force from which loss results *directly and independently of all other causes,* hereinafter called accidental bodily injuries." The evidence showed that the insurer, prior to the alleged injury of April 2, 1963, had already completed payment to the insured of the full amount of compensation under the policy for *partial* disability resulting from a previous injury. The insurer had paid the plaintiff's claims arising from two previous injuries, both of which involved injuries or re-injury to the back, and had continued this same policy in force over a period of several years. The jury might, therefore, find that the insurer did not intend to exclude an injury such as the alleged one of April 2, 1963, but that it considered each one as a new injury. Nor would the fact that the plaintiff had symptoms of arthritis necessarily bar his claim. " 'An accident insuring agency is not required to accept every person as a risk, and in preparing its policies it may exclude any risk as to any individual, but, unless it clearly points out the risks not assumed, it seems only logical that it accepts the risks of infirmity which are generally considered normal to mankind at the various stages of life, and therefore, that osteo-arthritis, which in common parlance may be considered normal from that which would be considered abnormal, cannot be considered as a concurring cause of disability. . .' If every bodily weakness resulting from the normal wear and tear of living is such an infirmity as may 'contribute to' a loss (i.e., death or disability) caused by accidental injury it is obvious that accident insurance benefits would substantially disappear except in cases where instant death resulted, a fact

which the ordinary purchaser of an accident insurance policy does not intend as a part of his contract." *Businessmen's Assurance Co. v. Tilley,* 109 Ga. App. 529, 534 (2) (136 SE2d 514). Contracts of insurance are to be construed more strongly against the insurer and in favor of the insured and, where an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnity. *State Farm Fire &c. Co. v. Rowland,* 111 Ga. App. 743, 744 (143 SE2d 193) and cit. There was medical testimony, moreover, that there were, in addition to the arthritic symptoms, muscle spasm and muscle sprain which were somewhat worse than they were prior to April 2.

■ The evidence is conflicting as to whether the plaintiff filed a written proof of loss as required by the policy. The evidence on behalf of the defendant was that none was ever received by it. Dr. Boland testified that he had made a report to the defendant on April 26, 1963, in which he indicated that the plaintiff had fallen and slipped out of a car and had muscle strain of the back, lumbosacral and cervical regions, that the contributing factors could have been previous accidents and that he was, in the doctor's opinion, permanently and totally disabled at that time. The plaintiff testified that he presented this report personally to various agents of the defendant.

Even if the evidence did not authorize a finding that a written proof of loss per se was filed, however, there was evidence that the insurer waived such filing. The plaintiff notified the defendant's agent in Dahlonega the very day of the injury and went to the agent's office within a few days to report on it. The plaintiff testified that, although his claim was filed under his automobile medical payments policy, he mentioned the other policy to the agent, who told him that he would have "that started up right straight." The agent, Bill Towson, testified that he was aware of the accidental injury policy; that he had customarily received oral reports and claims from the plaintiff, which he did with regard to the present claim; that the present claim was made under the automobile medical payments policy, which claim was subsequently paid, but that the plaintiff had done everything Towson had told him to do in regard to the

health and accident claim and had furnished all reports to Towson which he required. Both Towson and the plaintiff testified that they made numerous trips and phone calls to the defendant's various offices, wrote letters, etc., in attempts to settle the present claim. The plaintiff testified that when he attempted to personally deliver Dr. Boland's report to the defendant's Atlanta office claim manager he was referred to another of its agents, Peyton Todd, who told him to "get some attorneys and just fight it out in court," then closed the door and wouldn't talk to him about it. There was evidence that the plaintiff's file was sent back and forth among various offices of the defendant in several cities and that the defendant's treatment of the plaintiff in regard to the present claim was, in the testimony of the defendant's own agent, Towson, "shabby." The latter testimony, which was attacked by the special ground of appellant's motion for a new trial as a conclusion of the witness, was sufficiently supported by the witness's other testimony, hence this ground was without merit.

■ The verdict in the case at bar was as follows: "We find for the plaintiff a total of $5,056 of which $1,500 is attorney fee." The record shows that the court, upon receiving the verdict, specifically asked the jury if there was any penalty award, to which the foreman replied, "No."

This court held, in the case of *Continental Aid Assn. v. Hand,* 22 Ga. App. 726 (2) (97 SE 206), that where the evidence was sufficient to authorize a finding of bad faith, the fact that the jury did not award the 25% damages allowed by the statute would not prevent the recovery of attorney's fees. It was there stated that there is nothing in this section [the present *Code Ann.* § 56-1206; Ga. L. 1960, pp. 289, 502; Ga. L. 1962, p. 712] or in the case of *Empire Life Ins. Co. v. Allen,* 141 Ga. 413 (4), 418 (81 SE 120) that prevents the recovery of one without the other. Subsequent cases have held that where the verdict *expressly states* that no bad faith or penalty is found, the award of attorney's fees is nullified. See *Union Central Life Ins. Co. v. Cofer,* 103 Ga. App. 355, 363 (119 SE2d 281); *Occidental Life Ins. Co. v. Templeton,* 107 Ga. App. 322, 326 (4) (130 SE2d 168), reversed on other grounds in 219 Ga. 39 (131 SE2d 530)

and 108 Ga. App. 121 (132 SE2d 131). In a case involving a verdict substantially the same as the one in the case sub judice ("We the jury find in favor of the plaintiff in the amt. of $420.00 plus $250.00 attorney fees."), this court followed the *Continental* case, supra, rather than the *Occidental* case, supra, and allowed the award of attorney's fees without a penalty award. *Piedmont &c. Life Ins. Co. v. Gunter,* 108 Ga. App. 236, 239 (132 SE2d 527). In the *Piedmont* case, supra, however, it does not appear that there was no finding of bad faith on the part of the insurer. Although the verdict per se in the present case does not expressly state that no bad faith or penalty was found, the answer solicited by the court in that regard is sufficient to place the case within the ambit of the line of cases represented by the *Union Central* and *Occidental* cases, supra.

Accordingly, since the evidence authorized the verdict in favor of the plaintiff and since attorney's fees are not authorized, the judgment of the trial court overruling the defendant's amended motion for a new trial will be affirmed with direction that that part of the verdict awarding $1,500 attorney's fees be written off by the plaintiff.

*Judgment affirmed with direction. Frankum and Pannell, JJ., concur.*